No. 46,623

STATE OF KANSAS, *Appellee*, v. EDNA EDWARDS, JR., *Appellant*.

(498 P. 2d 48)

Opinion filed June 10, 1972,

*Lyle P. Baker*, of Sowers, Sowers, Carson and Johnston, of Wichita, argued the cause and was on the brief for the appellant.

*Reese C. Jones*, deputy county attorney, argued the cause, and *Vern Miller*, attorney general, and *Keith Sanborn*, county attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: Mr. Edna Edwards, Jr., was convicted of the crime of aggravated battery as defined in K. S. A. 1971 Supp. 21-3414. The victim, Thomas A. Eggleston, was stabbed in the back with a paring knife by Ronald E. Martin, an associate and companion of the defendant Edwards.

Martin was convicted of aggravated robbery and of aggravated

assault based upon the same acts. The events giving rise to the present charge against Edwards are set forth in *State v. Martin,* 208 Kan. 950, 495 P. 2d 89.

In the present appeal Edwards contends that his conviction should be set aside because the evidence failed to establish an essential element of the crime of aiding and abetting. He argues that Martin committed the act for which defendant was convicted and that under K. S. A. 1971 Supp. 21-3205 he is not liable for the crime of another unless there is direct proof he *intentionally* aided and abetted Martin in the commission of the crime. The degree of proof of criminal intent to aid and abet another in a crime is the bone of contention.

The evidence in the record indicates that the defendant Edwards, Ronald E. Martin and two women were together on the morning Thomas A. Eggleston was stabbed and robbed in his home. It appears from defendant's own testimony that he furnished the car and drove his three companions to the Eggleston home.

The two women had been to the Eggleston home two hours before. They had remained only a few minutes and then left without explanation. They reappeared at 4:30 or 5:00 o'clock that morning in the company of Edwards and Martin. Eggleston and a cab driver by the name of Sumral were the only persons in the house when the quartet arrived. The four were apparently admitted into the house by Eggleston, who was drunk at the time. On entering the house the defendant looked at the furniture and indicated by comment "they could make a killing there." The defendant immediately engaged the cab driver, who was a new-found friend of Eggleston, in conversation and the two withdrew from the group into another room. The cab driver tried to persuade the defendant to leave the premises but the defendant told him the girls had been insulted by Eggleston when they were at the house two hours before.

While the defendant and the cab driver were in the next room, defendant's companions were occupied with Eggleston a short distance away in the hallway. The cab driver heard a commotion and went to the hallway. He saw Eggleston lying on the floor bleeding from stab wounds. Martin and the two women were standing next to him. Thereafter the victim Eggleston saw the defendant Edwards carry away a radio. He saw one of the women carry away a jewelry box containing over $200 in cash. Other personal property belonging to Eggleston, including a television set, was found missing.

The four early morning visitors left the Eggleston home at approximately the same time. It can be inferred the Edwards car was used by the quartet in hauling the loot away. Eggleston was helped into his bedroom by the cab driver and the police were called. Additional details of the episode can be found in *State v. Martin*, supra.

The defendant Edwards, Ronald E. Martin and Janet L. Williams were jointly charged in two counts of an information as principals in the crimes. The first count charged the three individuals with the aggravated robbery of Thomas A. Eggleston under K. S. A. 1971 Supp. 21-3427. The second count charged the three with aggravated battery against the person of Thomas A. Eggleston under K. S. A. 1971 Supp. 21-3414. Edwards was tried separately. He was acquitted on the charge of aggravated robbery but was convicted of aggravated battery. He has appealed from this conviction.

This is the first occasion that this court's attention has been specifically directed to the section of the Kansas Criminal Code (L. 1969, ch. 180, effective July 1, 1970) dealing with the subject of liability for crimes of another. The code was the result of work undertaken by the Kansas Judicial Council. The council's comments on the code appear immediately following each section of the statute. K. S. A. 1971 Supp. 21-3205, which relates to liability for crimes of another, follows the Minnesota code according to the council's comments. This new section was intended to supersede K. S. A. 21-105 which spoke in terms of principals in the first and second degrees and accessories before the fact, even though all were liable to the same extent for a crime. See *State v. Yohe*, 203 Kan. 855, 457 P. 2d 12.

K. S. A. 1971 Supp. 21-3205 reads as follows:

"**Liability for crimes of another.** (1) A person is criminally responsible for a crime committed by another if he intentionally aids, abets, advises, hires, counsels or procures the other to commit the crime.

"(2) A person liable under subsection (1) hereof is also liable for any other crime committed in pursuance of the intended crime if reasonably foreseeable by him as a probable consequence of committing or attempting to commit the crime intended.

"(3) A person liable under this section may be charged with and convicted of the crime although the person alleged to have directly committed the act constituting the crime lacked criminal capacity or has not been convicted or has been acquitted or has been convicted of some other degree of the crime or of some other crime based on the same act."

The council in its comments indicates that, although the principles of liability set forth in the section do not refer to principals and accessories, no change in the substance of the former body of law was intended when the new section was drafted.

Defendant's main contention is that sub-section (1) of this statute requires direct proof beyond a reasonable doubt of actual intention or at least foreseeability on his part for Martin to commit the aggravated battery upon the person of Thomas A. Eggleston. Defendant insists that he was merely furnishing the transportation for his companions, that he was acquitted of any participation in the robbery and that it was not foreseeable that his companion Martin would stab Eggleston in the back with a paring knife. The difficulty in accepting this reasoning stems from the faulty premise that his acquittal on the robbery charge somehow placed him in the position of being an innocent bystander in the whole affair.

An acquittal of defendant on the aggravated robbery charge does not prevent the use of evidence introduced which supports a conviction on the related crime of aiding and abetting Martin to commit the aggravated battery arising from the same set of facts. In an analogous situation this court has held that although a burglary charge may be void a conviction of larceny in connection therewith may stand if supported by substantial, competent evidence introduced at the trial. See *State v. Bratcher,* 105 Kan. 593, 185 Pac. 734, and *State v. Baker,* 197 Kan. 660, Syl. ¶ 4, 421 P. 2d 16.

There can be little doubt from the evidence that both the robbery and the battery occurred. There was direct evidence that defendant transported Martin to the scene of these crimes. The statement of the defendant, as he viewed Eggleston's furniture, that *they* could make a killing and his subsequent statement to the cab driver, that the girls had been insulted, can only be interpreted as indicating some action was contemplated by him and his companions. Robbery is a crime of violence committed by threat or force. There was evidence that defendant participated in the aggravated robbery by taking a radio from the premises. From the facts it may readily be inferred that violence, if necessary, was contemplated when the four entered the house. It might also be inferred that defendant by prearrangement engaged the cab driver in conversation so as to lure him into the next room out of the immediate zone of violence. Since the four visitors left the premises

together shortly after the battery occurred and while the victim lay bleeding from stab wounds, a strong inference would arise of joint participation and approval of the criminal acts. Under these circumstances the defendant can hardly be considered an innocent bystander in the whole affair.

K. S. A. 1971 Supp. 21-3205, effective July 1, 1970, which holds a person criminally responsible if he intentionally aids or abets another to commit a crime makes no change in the degree of proof of intent necessary to establish criminal responsibility. The element of intent necessary to establish and support criminal responsibility for aiding or abetting another to commit a crime may be inferred from circumstantial evidence. Cases in support thereof are *State v. Jackson*, 201 Kan. 795, 443 P. 2d 279, cert. den. 394 U. S. 908, 22 L. Ed. 2d 219, 89 S. Ct. 1019; *State v. Turner*, 193 Kan. 189, 392 P. 2d 863; and *State v. Sharp*, 202 Kan. 644, 451 P. 2d 137.

In *Jackson* this court upheld a conviction for forcible rape. The defendant did not engage in the sexual act which was the basis for his conviction. He searched the glove compartment of the victim's automobile while the young lady was being raped in the back seat. After the rape was completed he attempted to prevent the victim from leaving the scene of the crime by tearing out the wiring of the automobile. The evidence of intention to aid and abet the rape was inferred from the acts of the defendant and the circumstances of the crime.

In *Turner* the defendant was convicted for first degree murder in the shooting death of John R. Keach. Turner merely accompanied his friend Loren to the Keach home, then drove around the block, parked in front of the house and waited for Loren to return to the car. Loren shot and killed Keach, pilfered the house for loot and returned to the Turner car with a bushel basket of articles taken from the house. The loot was taken in Turner's car and later disposed of by the two participants. There was no direct evidence that the two participants intended to murder Keach or that they conspired to rob him. In the opinion this court said:

". . . All participants in a crime are equally guilty, without regard to the extent of their participation. It was sufficient to charge directly those concerned with the crime, and if, in execution of a common purpose to rob, one of them did the killing, the other would be guilty of murder. [Citations omitted.]" (p. 196)

In *Sharp* the defendant was convicted of robbery and burglary. The acts were committed by a group of boys and it was held that although the defendant may not personally have taken the victim's money yet the evidence of his presence and participation was sufficient to justify submission of the question of his guilt to a jury.

Certain elements necessary to complete proof of crimes are not subject to direct evidence. Elements such as criminal intent and malice depend upon a state of mind. A defendant seldom admits to criminal intent or malice. Therefore, because of the very nature of these elements, proof will generally depend upon inferences to be drawn from the acts of a defendant. Our cases support this general statement. See *State v. Donohue,* 197 Kan. 317, 416 P. 2d 287, and cases cited in this opinion.

The existence of criminal intent in aiding or abetting another to commit a crime may be presumed or inferred from circumstances surrounding the perpetration of the crime and is a fact question for jury determination.

The above rule is in accord with the Minnesota cases based upon the Minnesota Code from which K. S. A. 1971 Supp. 21-3205 was modeled. In *State v. Bellecourt,* 277 Minn. 163, 152 N. W. 2d 61, the victim of theft on a public sidewalk was struck on the head just as three persons were passing in the opposite direction. The three were walking together. No other persons were in the vicinity when the blow was struck. The victim's money was lifted by one of the three persons. There was no direct proof that the defendant, rather than the other two, struck the blow or took the money. Under the provisions of the Minnesota Code relating to liability for crimes of another it was held:

". . . Once a reasonable inference arises, however, from all the circumstances that defendant was a participant with two others in the commission of the crime of theft at that time and place, defendant's guilt is sufficiently established. This inference is a fact question for jury determination, and the jury found, as it could, that he was such a participant." (p. 165)

(See also *State v. Sutton,* 277 Minn. 157, 152 N. W. 2d 57, and *State v. Parker,* 282 Minn. 343, 164 N. W. 2d 633.)

When the trier of facts has weighed the evidence, determined the credibility of the witnesses and rendered a verdict of guilt, the verdict must stand if it is supported by substantial competent evidence. It was pointed out in *State v. Shaw,* 195 Kan. 677, 408 P. 2d 650, that before a verdict approved by the trial court may be

set aside on appeal because of insufficiency of the evidence, it must clearly appear that on no hypothesis whatever is there sufficient substantial evidence to support a conviction.

We have reviewed the evidence in the record. The circumstances surrounding the perpetration of the crimes clearly support an inference that defendant aided and abetted in the aggravated battery of the victim with the requisite criminal intent mentioned in K. S. A. 1971 Supp. 21-3205 (1).

The judgment of conviction is affirmed.