(604 P 2d 68)

No. 50,541

STATE OF KANSAS, *Appellee,* v. MARVIN BERNARD DAVIS, *Appellant.*

Opinion filed December 21, 1979.

*John J. Ambrosio,* of Levy, Ambrosio & McDowell, of Topeka, for appellant.

*C. William Ossmann,* assistant district attorney, *Gene M. Olander,* district attorney, and *Robert T. Stephan,* attorney general, for appellee.

Before FOTH, C.J., ABBOTT and MEYER, JJ.

ABBOTT, J.: This is a direct appeal by defendant, Marvin Bernard Davis, from a jury conviction of aggravated battery (K.S.A. 21-3414). The defendant was also convicted of attempted misdemeanor theft (K.S.A. 1978 Supp. 21-3701 and K.S.A. 21-3301), but does not challenge that conviction. The sole issue on appeal is the sufficiency of the State's evidence to withstand a motion for

acquittal on defendant's aggravated battery conviction based on his aiding and abetting a third person who shot a security guard.

Bertram O. Heath, Jr., was with the defendant, Davis, at the time a security guard was shot. The two were together at some unspecified time on January 24, 1978, when they made arrangements to meet a friend, Julius Brown, between 10:00 p.m. and 10:30 p.m. Davis and Heath picked up Brown at the prearranged time and drove Brown to his sister's home, where they waited in the car for about twenty minutes while Brown was inside. The record before us contains no evidence of ownership of the vehicle used by Davis and Heath, but it is evident that Heath was the driver of the vehicle. The three then proceeded to an apartment building at 705 Polk, Topeka, Kansas, where the aggravated battery occurred during the early morning hours of the following day. The apartment building has a security system which requires guests or visitors to press a buzzer to notify a resident of their presence. The resident can then clear them through a locked door at the front of the building. Brown entered the apartment building and Davis and Heath remained outside. The defendant, Davis, later used the buzzer system and joined Brown in apartment 19. Also present was Dennis Talley, who occupied the apartment. Later that evening, or early morning, Heath buzzed the apartment at which time defendant left the building and joined Heath. Shortly after the defendant left, he returned with Heath and entered the apartment by using the buzzer system. Heath, through Brown, requested a Phillips screwdriver on the pretext it was needed to start the car. Talley did not have a Phillips screwdriver so he gave Heath a butterknife. Heath and Davis left the apartment.

At about 1:45 a.m., Randy E. Stone, a security guard, received information from his dispatcher that a resident of the apartment building at 705 Polk had reported hearing sounds, indicating vending machines in the laundry room were being broken into. Stone entered a rear door with his handgun drawn. He observed the defendant standing directly in front of the laundry room door and heard prying noises in the laundry room. The defendant was ordered to assume a position with his hands against the wall. Stone observed at that time that the defendant had only one arm. Defendant told the guard he had just left apartment 19 and was leaving the building. He inquired of Stone what was going on,

but he did not assume a position at the wall until he received the third or fourth command to do so.

Heath came out of the laundry room and was placed facing the wall within a foot or two of the defendant. Stone observed that a pop machine had been pried open. He inquired how many people were left in the laundry room and Heath replied there were three more in there. Heath suggested that Stone allow him to attempt to "talk" them out because there would be trouble if the guard himself tried to get them out. There is no other evidence that anyone else was in the laundry room and there was no effort made to talk anyone out of the room. The security guard was constantly turning around to watch for the arrival of a backup unit that he had requested, and on one occasion when he turned back the two men had turned their heads and were staring directly at him while they were against the wall. He told them to face the wall, which they did.

Stone did not hear any conversation or noise being made by either man, nor did he observe anything that he interpreted as a signal. He looked away from the men again and as he did so they both moved away from the wall at the same time and Heath, who was nearest the laundry room door, ran into the laundry room. The defendant remained standing in the hallway, facing Stone from a distance of five or six feet. There is no evidence that the defendant made any attempt to attack Stone or that he failed to obey any orders from Stone after he stepped away from the wall. Within a minute after Heath ran into the laundry room, a hand holding a handgun appeared from the laundry room and four or five shots were fired at Stone. The second shot struck his right arm, rendering him unable to use his gun. Stone did not see who shot him, but he did see the hand holding the handgun and did testify the gun was fired by a man of the same race as Heath. Being unable to defend himself, Stone ran out the back door and when he looked back inside he saw Heath and the defendant running down the hall in the opposite direction. The defendant had remained in the hallway until after Stone was shot and then ran from the scene. The defendant and Heath were later apprehended on I-70 in Wabaunsee County and were positively identified at trial.

The defendant did not testify at trial and no evidence was presented in his behalf. He moved for judgment of acquittal,

which the trial judge denied. The jury returned a verdict of guilty of attempted misdemeanor theft and aggravated battery. He was sentenced to the Secretary of Corrections for an indeterminate term of not less than five nor more than twenty years on the aggravated battery conviction and for a term of one month on the attempted theft conviction with the sentences to run concurrently. The defendant now appeals. He does not object to the instructions that were given to the jury and limits his appeal to the question of whether the trial court erred in overruling his motion for judgment of acquittal on his aggravated battery conviction.

One who acts as a watchman to prevent surprise while others are engaged in committing a crime is deemed, in the eyes of the law, to be a principal therein and is punishable as such. *State v. Neil,* 203 Kan. 473, Syl. ¶ 1, 454 P.2d 136 (1969). The defendant was obviously convicted of aiding and abetting. The statute controlling liability for the crimes of another is K.S.A. 21-3205, which provides:

"(1) A person is criminally responsible for a crime committed by another if he *intentionally aids,* abets, advises, hires, counsels or procures the other to commit the crime.

"(2) A person liable under subsection (1) hereof is also liable for any other crime committed in pursuance of the intended crime *if reasonably foreseeable by him as a probable consequence of committing or attempting to commit the crime intended.*

"(3) A person liable under this section may be charged with and convicted of the crime although the person alleged to have directly committed the act constituting the crime lacked criminal capacity or has not been convicted or has been acquitted or has been convicted of some other degree of the crime or of some other crime based on the same act." (Emphasis supplied.)

The State does not seriously contend that the evidence is sufficient to prove the defendant *intentionally* aided the aggravated battery, and our review of the record on appeal leads us to conclude there is no evidence the defendant did so. Thus, under the facts of this case the question becomes whether it was reasonably foreseeable by the defendant that an aggravated battery would occur as a probable consequence of committing misdemeanor theft or attempting to commit misdemeanor theft. A review of the facts in each case is necessary to determine whether violence is reasonably foreseeable as a probable consequence of committing the crime intended. *State v. Edwards,* 209 Kan. 681, 686, 498 P.2d 48 (1972). Defendant has a heavy burden, for the

necessary intent and foreseeability may be inferred from circumstantial evidence (*State v. Sarver,* 134 Kan. 98, 100, 4 P.2d 440 [1931]) and is a fact question for jury determination. *State v. Edwards,* 209 Kan. at 686. The Kansas Supreme Court recently restated the test for granting a motion for acquittal in *State v. Taylor,* 225 Kan. 788, 792, 594 P.2d 211 (1979):

"This court has spoken repeatedly on the test for motion for judgment of acquittal. In *State v. Sanders,* 225 Kan. 147, 151, 587 P.2d 893 (1978) this court said, quoting from *State v. Gustin,* 212 Kan. 475, Syl. ¶ 3, 510 P.2d 1290 (1973):

" 'A trial judge in passing upon a motion for judgment of acquittal must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. If he concludes guilt beyond a reasonable doubt is a fairly possible result, he must deny the motion and let the jury decide the matter. If he concludes that upon the evidence there must be such a doubt in a reasonable mind, he must grant the motion.' "

Defendant suggests that theft is a crime against property and not a crime of violence; therefore aggravated battery is not a reasonably foreseeable crime resulting from the crime of attempted theft. That argument in felony murder cases was rejected by the Kansas Supreme Court when it considered in *State v. Smith,* 225 Kan. 796, 594 P.2d 218 (1979), whether the felony is inherently or foreseeably dangerous to human life. In *Smith,* at 801, the Court adopted a simple but effective method of determining whether the crime is inherently or foreseeably dangerous by "testing both the crime itself and the manner in which it was committed for dangerous characteristics." The test adopted was first used in *State v. Goodseal,* 220 Kan. 487, 493, 553 P.2d 279 (1976), where the Court said it would look first at the crime intended to see if it was inherently dangerous to human life, stating:

"[W]here doubt may exist, we see nothing wrong in considering both the nature of the offense in the abstract and the circumstances of its commission in determining whether a particular felony was inherently dangerous to human life. Some felonies, such as aggravated robbery, viewed in the abstract alone, are of such nature as to be inherently dangerous to human life, while another which seems of itself not to involve any element of human risk may be committed in such a dangerous manner as to be of the same character.

"Hence we hold that the nature of the felony and, where necessary for determination, the circumstances of its commission are relevant factors in considering whether the particular felony was inherently and foreseeably dangerous to human life so as to support a conviction of felony murder. These are questions for the trial court and jury to decide in appropriate cases."

We see no valid reason why the same rule should not apply in determining whether an aggravated battery committed in pursuance of the intended crime, even though unintended, is reasonably foreseeable as a probable consequence of committing or attempting to commit the crime intended.

To us, this seems to be the reasoning used in *State v. Edwards,* 209 Kan. 681, where the defendant and three others entered the victim's house for the purpose of robbing him. During the course of the robbery, while defendant was in another room of the home, the victim was stabbed by one of the other persons. Defendant was charged by virtue of the aiding and abetting statute with aggravated battery, and on appeal he argued that it was not foreseeable that his companion would stab the victim. The Kansas Supreme Court rejected that argument, reasoning:

"There can be little doubt from the evidence that both the robbery and the battery occurred. There was direct evidence that defendant transported Martin to the scene of these crimes. The statement of the defendant, as he viewed Eggleston's furniture, that *they* could make a killing and his subsequent statement to the cab driver, that the girls had been insulted, can only be interpreted as indicating some action was contemplated by him and his companions. Robbery is a crime of violence committed by threat or force. There was evidence that defendant participated in the aggravated robbery by taking a radio from the premises. From these facts it may readily be inferred that violence, if necessary, was contemplated when the four entered the house. It might also be inferred that defendant by prearrangement engaged the cab driver in conversation so as to lure him into the next room out of the immediate zone of violence. Since the four visitors left the premises together shortly after the battery occurred and while the victim lay bleeding from stab wounds, a strong inference would arise of joint participation and approval of the criminal acts. Under these circumstances the defendant can hardly be considered an innocent bystander in the whole affair." 209 Kan. at 684-85.

If a crime is inherently dangerous to human life, it would be foreseeable that an aggravated felony might occur. Misdemeanor theft, however, is not a crime that is in and of itself inherently dangerous. We must therefore look to the circumstances of the commission of the attempted theft to see if it was reasonably foreseeable that an aggravated battery might occur.

In the case at bar the intended crime, misdemeanor theft, was to take place in the early morning hours in a laundry room that the defendant knew to be unoccupied when the theft occurred. A lookout was posted to insure that no one walked into the room

while the theft was in progress. While a situation might exist whereby a misdemeanor theft might be inherently dangerous (such as the theft of property from the immediate presence of its owner or others) and thus violence reasonably foreseeable, such was not the case here. The record on appeal does not even hint that the defendant knew or had any reason to suspect Heath had a weapon. True, the defendant had been with Heath most of the evening. Heath, however, had been alone in a car that he controlled and had ample opportunity shortly before the offense occurred to obtain the gun without defendant's knowledge. We do emphasize that the fact a gun was used is immaterial. If the defendant could have reasonably foreseen any use of force that would have amounted to an aggravated battery, he could have been convicted irrespective of the actual weapon used.

There is no evidence that the defendant and Heath had any plan for escape or had discussed what they would do if discovered. There was no showing that either the defendant or Heath had a propensity for violence or that they normally carried a weapon of any kind. Misdemeanor theft in itself is not a crime of violence, especially when conducted outside the presence of others.

The State argues that the defendant knew the apartment had a buzzer system and therefore it followed that he would know a security guard might be present. No evidence was presented to that effect, and if it is common practice to have an armed security officer present in all apartment buildings that have a "buzzer" security system, this Court is not aware of that fact, nor will it speculate that a criminal defendant would have greater knowledge of that fact. The State then argues that it is reasonably foreseeable that persons committing crimes have an escape plan; and it couples that argument with its argument that the defendant should have known an armed security guard might be present, saying it is foreseeable that an attempted escape or an attempt to avoid apprehension might involve aggravated battery. In our opinion, it is mere speculation to say that a person who with another is planning to commit a misdemeanor theft in an unoccupied room can reasonably foresee in the absence of other facts that the coconspirator will shoot someone in an effort to avoid apprehension.

We likewise reject the State's arguments that because defendant

moved back from the wall at the same time as Heath, the aggravated assault was foreseeable. The fact that defendant did not drop to the floor or run sheds no light on foreseeability. The security guard did not drop to the floor and he was being shot at. The defendant was standing some six feet from an armed security guard in an extremely dangerous situation. A sudden move on the defendant's part likely would have resulted in his being shot. He did not move until the security guard ran from the building. The record on appeal does not contain evidence of whether the defendant knew or should have known that the security guard had been struck in the arm. Presumably the security guard was still armed when he ran from the building. The defendant then fled. We do not deem the defendant's acts, whether taken singularly or as a whole, as being sufficient for a reasonable person standing in the defendant's shoes to foresee or even suspect that an aggravated battery might occur as a result of the attempted misdemeanor theft. The State cannot hold an accomplice liable for a crime totally unforeseeable. *State v. Palermo,* 224 Kan. 275, 277, 579 P.2d 718 (1978). Based on the evidence, as a matter of law there had to be a reasonable doubt that the aggravated battery was foreseeable by the defendant and the trial court erred in refusing to grant the motion for judgment of acquittal.

Reversed and remanded with directions that a judgment of acquittal be entered on the aggravated battery charge.