No. 67,239

STATE OF KANSAS, *Appellee,* v. WADDELL WARREN, *Appellant.*

(843 P.2d 224)

Opinion filed December 11, 1992.

*Steven R. Zinn,* deputy appellate defender, argued the cause and was on the brief for appellant.

*Frank E. Kohl,* county attorney, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

ABBOTT, J.: This is a direct appeal by the defendant, Waddell Warren, from his convictions for aiding and abetting aggravated robbery, aiding and abetting aggravated battery, and conspiracy to commit robbery. Warren also appeals his sentence.

On March 7, 1991, between 3:00 and 3:30 p.m., 87-year-old Pauline Willhardt was walking home in Leavenworth. Donna Tanksley, who was accompanied by Suzy Majors, forcibly took Mrs. Willhardt's purse, knocking the elderly woman to the ground. Mrs. Willhardt spent almost three months in the hospital recovering from a dislocated shoulder, a broken kneecap, broken teeth, and facial abrasions. Mrs. Willhardt suffered permanent injury. Since the incident, she must use a cane to assist her in walking.

Witnesses saw the two young women take Mrs. Willhardt's purse and run from the scene. Shortly thereafter, one of the witnesses saw the two women in a car being driven by the defendant. Another witness testified that he saw the two women get into the car driven by the defendant and that they ran straight for the car as if Warren was waiting for them.

Tanksley and Majors were arrested the day of the crime and voluntarily gave a statement to the police. Tanksley pled guilty to aggravated robbery, aggravated battery, and conspiracy to commit robbery. Majors pled guilty to aiding and abetting robbery,

aiding and abetting aggravated battery, and conspiracy to commit robbery.

Tanksley and Majors testified for the State at the defendant's trial. Both testified to the following: Prior to the robbery, Tanksley, Majors, and Warren had been smoking crack cocaine. The defendant said that if they wanted to do more crack, they needed money. He suggested that the two women rob someone or snatch a purse and that he would provide the transportation for getting away. Warren took them initially to a mall and then dropped them off downtown. After robbing Mrs. Willhardt, Tanksley and Majors ran until they found Warren in his car. The two women entered the car, and Warren drove off. Majors also stated that with the money found in the purse, they bought more crack and smoked it. The three were arrested later that day.

Tanksley and Majors testified that William Larry "Kenyata" Bradley, a friend of Warren's, had been with the three prior to the crime and that Bradley heard the others discuss the plan but did not participate in the crime. Bradley testified for the defense that he had been with the defendant from approximately 8 a.m. until approximately 3 p.m. on the day of the crime and that Tanksley and Majors had not been with them during that period of time. Although Warren did not testify at trial, his version of the story was that the two women had walked up to his car and requested a ride and that he had no knowledge of or involvement in the robbery.

A jury convicted Warren of aiding and abetting aggravated robbery, aiding and abetting aggravated battery, and conspiracy to commit robbery. Pursuant to the Habitual Criminal Act, Warren was sentenced to a controlling term of 45 years to life.

The defendant timely appeals his conviction and his sentence.

## I. Lesser Included Offense

On appeal, Warren contends the trial court erred in not instructing the jury on aiding and abetting robbery as a lesser included offense of aiding and abetting aggravated robbery. Technically, the jury was instructed on aggravated robbery and separately on aiding and abetting. The jury instructions reflected the following statutory language.

"Aggravated robbery is a robbery committed by a person who is armed with a dangerous weapon or who inflicts bodily harm upon any person in the course of such robbery." K.S.A. 21-3427. "Robbery is the taking of property from the person or presence of another by threat of bodily harm to his person or the person of another or by force." K.S.A. 21-3426. Aiding and abetting is defined, in part, as follows:

"(1) A person is criminally responsible for a crime committed by another if such person intentionally aids, abets, advises, hires, counsels or procures the other to commit the crime.

"(2) A person liable under section (1) hereof is also liable for any other crime committed in pursuance of the intended crime if reasonably foreseeable by such person as a probable consequence of committing or attempting to commit the crime intended." K.S.A. 1991 Supp. 21-3205.

Warren argues that the evidence supported an instruction on robbery because there was no evidence he intended for the two women to arm themselves or to inflict bodily harm. Although acknowledging that Majors testified he suggested the two women rob someone or snatch a purse, Warren emphasizes that both women's testimony focused on his suggestion of snatching a purse. He also points out that neither woman had a prior conviction and that there was no evidence the women had a propensity for violence. Additionally, based upon Majors' testimony, the defendant stresses he proposed that the women go into a mall for the purpose of snatching a purse and he dropped them off at a mall for that purpose. Warren implies that the two women's actions surpassed his intent when they left the mall and found a victim outdoors. He suggests that the reason for choosing a mall in which to snatch a purse was because a mall is a likely location for shoppers to leave a purse unattended temporarily. Why a mall was chosen is not discussed in the record. The record, however, contains evidence that after failing at the mall, the defendant took the two women from the mall to downtown Leavenworth, where the robbery occurred.

The defendant then directs the court's attention to subsection (2) of the aiding and abetting statute, which upholds a finding of liability for any crime committed in pursuance of the intended crime if the crime committed was a reasonably foreseeable consequence. Warren contends that the foreseeability of the crime

committed is a question of fact for the jury to decide. In support of this contention, he cites *State v. Davis,* 4 Kan. App. 2d 210, 213, 604 P.2d 68 (1979), in which the Court of Appeals stated:

"A review of the facts in each case is necessary to determine whether violence is reasonably foreseeable as a probable consequence of committing the crime intended. *State v. Edwards,* 209 Kan. 681, 686, 498 P.2d 48 (1972). Defendant has a heavy burden, for the necessary intent and foreseeability may be inferred from circumstantial evidence [citation omitted] and is a fact question for jury determination. *State v. Edwards,* 209 Kan. at 686."

Warren fails to take into account that the *Davis* court added: "If a crime is inherently dangerous to human life, it would be foreseeable that an aggravated felony might occur." 4 Kan. App. 2d at 215. See also *State v. Chism,* 243 Kan. 484, 490, 759 P.2d 105 (1988) (in the context of felony murder, foreseeability established as a matter of law if the underlying felony is inherently dangerous to human life). Robbery is a crime inherently dangerous to human life. *State v. Giddings,* 226 Kan. 110, 595 P.2d 1115 (1979). Therefore, it was foreseeable that an aggravated robbery might occur.

*State v. Johnson & Underwood,* 230 Kan. 309, 634 P.2d 1095 (1981), is also instructive. Johnson was convicted of aggravated robbery. On appeal, he argued that the trial court committed reversible error because it refused to instruct on robbery. This court rejected that argument, stating:

"In the present case the evidence is uncontroverted: the robbery was accomplished with a gun. Moreover, pursuant to K.S.A. 21-3205, the aiding and abetting statute, it is not necessary for both defendants to possess a gun to justify both being convicted of aggravated robbery. Proper instructions on aggravated robbery and aiding and abetting were given. Defendants were guilty of aggravated robbery or nothing." 230 Kan. at 311.

See *State v. Sutherland,* 248 Kan. 96, 101-03, 804 P.2d 970 (1991); *State v. Mitchell,* 234 Kan. 185, 189-90, 672 P.2d 1 (1983).

Here, it is uncontroverted that bodily harm was inflicted upon the victim. Proper instructions on aggravated robbery and aiding and abetting were given. With regard to the aggravated robbery charge, Warren was guilty of aggravated robbery or he was guilty of nothing. Under these facts, failure to instruct the jury on robbery was not error.

## II. Voluntary Intoxication

"Voluntary intoxication is not a defense to a general intent crime, although it may be used to demonstrate an inability to form a particular state of mind necessary for a specific intent crime. [Citation omitted.]" *State v. McDaniel & Owens*, 228 Kan. 172, 177, 612 P.2d 1231 (1980). See K.S.A. 21-3208(2). Aiding and abetting as well as conspiracy to commit a robbery, two crimes with which the defendant was charged, are specific intent crimes. See *State v. Sterling*, 235 Kan. 526, 529, 680 P.2d 301 (1984); *State v. Campbell*, 217 Kan. 756, 770-71, 539 P.2d 329, *cert. denied* 423 U.S. 1017 (1975).

Warren argues that the trial court erred in failing to instruct the jury on the affirmative defense of voluntary intoxication because both the State and defense presented evidence of his use of drugs and/or alcohol on the date the crimes were committed. The defendant, however, did not request or object to the lack of such an instruction.

The evidence did not warrant instructing the jury on voluntary intoxication. Here, as in *State v. Falke*, 237 Kan. 668, 703 P.2d 1362 (1985), the evidence showed Warren indulged in intoxicating drugs and beverages. The *Falke* court held that such evidence "failed to show a level of intoxication such that [the defendants] were 'utterly devoid of consciousness or awareness' of what they were doing. [Citation omitted.]" 237 Kan. at 683. The "evidence indicated that the defendants' 'intoxication' did not affect their abilities to reason, to plan, to recall, or to exercise their motor skills." 237 Kan. at 684. See *State v. Davis*, 2 Kan. App. 2d 698, 701-02, 587 P.2d 3 (1978), *rev. denied* 225 Kan. 846 (1979). The evidence did not show that Warren could not recall what occurred on the day the crimes were committed. There was no evidence he lost his ability to reason, to plan, to recall, or to exercise his motor skills.

The trial court did not clearly err in failing to instruct the jury on the affirmative defense of voluntary intoxication.

## III. Crime Necessarily Proved

Warren argues that his conviction for aiding and abetting aggravated battery is multiplicitous with his conviction for aiding and abetting aggravated robbery. The defendant relies upon two

Court of Appeals' cases in which the terms "multiplicity" and "lesser included offense" appear to be used interchangeably. Although these cases frame the issue as multiplicity, the test for lesser included offenses is applied. Despite Warren's reliance upon these cases, he specifies he "is not contending that the aggravated battery charge against him was a lesser included offense of the aggravated robbery charge." Because this area of the law is often confusing, both in case law and to practitioners, it may be helpful to review general principles of both multiplicity and lesser included offenses.

In *State v. Garnes*, 229 Kan. 368, 373, 624 P.2d 448 (1981), this court set forth the general principles for determining if charges are multiplicitous:

"(1) A single offense may not be divided into separate parts; generally, a single wrongful act may not furnish the basis for more than one criminal prosecution.

. . . .

(2) If each offense charged requires proof of a fact not required in proving the other, the offenses do not merge.

. . . . ..

(3) Where offenses are committed separately and severally, at different times and at different places, they cannot be said to arise out of a single wrongful act."

In *State v. Woods*, 250 Kan. 109, 119-20, 825 P.2d 514 (1992), *cert. denied* October 5, 1992, we recapitulated:

" 'Multiplicity exists when the State uses "a single wrongful act as the basis for multiple charges." [Citation omitted.] Charges are not multiplicitous if each charge requires proof of a fact not required in proving the other. [Citation omitted.] . . . Offenses are also not multiplicitous when they occur at different times and different places, because they cannot then be said to arise out of a single wrongful act.' *State v. Howard*, 243 Kan. 699, 703, 763 P.2d 607 (1988). . . .

"Multiplicity in the crimes charged exists if the crimes charged are based on 'a series of violent acts occur[ring] simultaneously.' *State v. Cathey*, 241 Kan. 715, 720, 741 P.2d 738 (1987); see *State v. Smith*, 245 Kan. 381, 392, 781 P.2d 666 (1989). This court has found offenses multiplicitous if the 'defendant's conduct constituted a single continuous transaction' or 'one continuing unbroken act of force.' *State v. Bishop*, 240 Kan. 647, 653-54, 732 P.2d 765 (1987).

. . . .

"Multiplicity does *not* exist if an act of violence is intermittent or separate and wholly unrelated to the other acts of violence. *State v. Bourne*, 233

Kan. 166, 168, 660 P.2d 565 (1983). If there is a 'break in the action' or if 'offenses occurred at separate times and in separate places,' the charges are not multiplicitous. *Bishop*, 240 Kan. at 653-54; see *State v. James*, 216 Kan. 235, 531 P.2d 70 (1975)."

Included offenses are codified at K.S.A. 21-3107, which provides, in part:

"(1) When the same conduct of a defendant may establish the commission of more than one crime under the laws of this state, the defendant may be prosecuted for each of such crimes. Each of such crimes may be alleged as a separate count in a single complaint, information or indictment.

"(2) Upon prosecution for a crime, the defendant may be convicted of either the crime charged or an included crime, but not both. An included crime may be any of the following:

(a) A lesser degree of the same crime;

(b) an attempt to commit the crime charged;

(c) an attempt to commit a lesser degree of the crime charged; or

(d) a crime necessarily proved if the crime charged were proved."

In *State v. Fike*, 243 Kan. 365, 368, 757 P.2d 724 (1988), this court discussed at some length the two-prong test to determine if a crime is an included crime under section (2)(d):

"The first step is to determine whether all of the statutory elements of the alleged lesser included crime are among the statutory elements required to prove the crime charged. This approach is ordinarily fairly straightforward, and requires a jury instruction on a particular lesser offense whenever all of its statutory elements will automatically be proved if the State establishes the elements of the crime as charged. For example, where the crime charged is aggravated burglary, the crime of burglary is clearly a lesser included offense, because every one of the statutory elements of burglary must of necessity be proved in establishing the elements of aggravated burglary.

"The result of the first step of the analysis, however, is not necessarily conclusive. Even if the statutory elements of the lesser offense are not all included in the statutory elements of the crime charged, a particular crime may nevertheless meet the statutory definition in 21-3107(2)(d) of an included crime under the second step of the analysis. This approach requires the trial court to carefully examine the allegations of the indictment, complaint, or information *as well as* the evidence which must be adduced at trial. If the factual allegations in the charging document allege a lesser crime which does not meet the statutory elements test *and* the evidence which must be adduced at trial for the purpose of proving the crime as charged would also necessarily prove the lesser crime, the latter is an 'included crime' under the definition in 21-3107(2)(d)."

In *State v. Gibson*, 246 Kan. 298, 300, 787 P.2d 1176 (1990), this court cautioned against confusing

"what the State may have actually proved in its evidence . . . with what the State was required to prove to establish the crime charged. The mere fact that the evidence adduced in proving the crime charged may also prove some other crime does not make the other crime a lesser included offense under K.S.A. 21-3107(2)(d)."

The Judicial Council commented that the main objective of this statute was "the formulation of limitations upon unfair multiplicity of convictions or prosecutions." Judicial Council Comment, 1968, to K.S.A. 21-3107. There is no doubt the concept of multiplicity and included offenses are related. Case law does not explain clearly the relationship between the two concepts and increasingly is blurring any distinction. A sampling of this case law is outlined below.

In *State v. Mason*, 250 Kan. 393, 827 P.2d 748 (1992), the defendant raised a multiplicity argument, cited K.S.A. 21-3107(2), and cited three cases applying that statute. The State relied upon K.S.A. 21-3107(1). This court discussed the two-prong *Fike* test, including more recent applications of it, and then held: "Multiplicity does not depend on whether the facts proved at trial are actually used to support the convictions of both offenses; rather, multiplicity turns on whether the necessary elements of proof of the one crime are included in the other." 250 Kan. 393, Syl. ¶ 3. It was concluded that the charges were not multiplicitous under K.S.A. 21-3107(2).

In *State v. Edwards*, 250 Kan. 320, Syl. ¶ 4, 826 P.2d 1355 (1992), this court held:

"K.S.A. 21-3107(1) formulates the limitations upon unfair multiplicity of convictions and prosecutions. The concern with multiplicity is that it creates the potential for multiple punishments for the same offense, which is prohibited by the double jeopardy clause of the Fifth Amendment of the United States Constitution and section 10 of the Kansas Bill of Rights."

See *State v. Frazier*, 12 Kan. App. 2d 164, 167, 736 P.2d 956 (1987) (K.S.A. 21-3107[1] governs multiplicitous issues arising out of the same conduct).

In *State v. Smith*, 245 Kan. 381, 781 P.2d 666 (1989), this court referred to K.S.A. 21-3107(2)(d) in discussing the multiplicity argument. The court then cited the principles set forth in *State v. Garnes*, 229 Kan. 368, and applied them. See *State v. Cathey*, 241 Kan. 715, 718-19, 741 P.2d 738 (1987).

In *State v. Freeman*, 236 Kan. 274, 281-82, 689 P.2d 885 (1984), this court stated:

"K.S.A. 1983 Supp. 21-3107 provides statutory authority where criminal conduct of a defendant, although consisting of a single transaction, may result in a multiple violation of the criminal code, for which the defendant may be severally prosecuted. [Citation omitted.] The prosecution may not split a single offense into separate parts where there is a single wrongful act which does not furnish the basis for more than one criminal prosecution. The test concerning whether a single transaction may constitute two separate and distinct offenses is whether the same evidence is required to sustain each charge. If not, the fact that both charges relate to and grow out of the same transaction does not create a single offense where two distinct offenses are defined by statute. [Citation omitted.] The same test is used in determining whether offenses charged in a complaint or information constitute lesser included offenses and are multiplicitous under 21-3107 . . . ."

Warren claims his convictions for aiding and abetting aggravated battery and aiding and abetting aggravated robbery are multiplicitous because both charges relied upon the same application of force and resulting injuries to the victim. The defendant requests that this court reexamine its holding in *State v. Higgins*, 243 Kan. 48, 55-56, 755 P.2d 12 (1988), in light of two recent Court of Appeals' cases, *State v. Hill*, 16 Kan. App. 2d 432, 825 P.2d 1141 (1991), and *State v. Perry*, 16 Kan. App. 2d 150, 823 P.2d 804 (1991).

In *Higgins*, the defendant argued (1) that his conviction for aggravated battery and aggravated robbery was multiplicitous because the State relied upon the same act of force to prove both offenses and (2) that K.S.A. 1987 Supp. 21-3107(2)(d) precluded his conviction for both offenses because "by proving aggravated robbery, the State necessarily proved aggravated battery." 243 Kan. at 55. This court rejected the multiplicity argument, reasoning:

"Neither crime is necessarily proved if the other crime is proved, since each crime contains unique elements not contained within the other crime. Aggravated battery requires the presence of an intent to injure the victim and requires the infliction of *great* bodily harm upon the victim. Aggravated robbery does not, requiring only the infliction of bodily harm. On the other hand, aggravated robbery requires the taking of property from another. Aggravated battery, of course, does not. The fact that the one application of force supplies the element of bodily harm for both offenses does not

prevent the prosecution for both offenses. *State v. Chears*, 231 Kan. 161, 643 P.2d 154 (1982)." 243 Kan. at 55.

The *Higgins* court also rejected the defendant's "lesser included offense" argument, stating: "In the present case, aggravated battery was not alleged nor was proof thereof required to establish aggravated robbery. It was a 'factually related offense' and therefore not within the preclusion of K.S.A. 1987 Supp. 21-3107(2)(d)." 243 Kan. at 56.

In *State v. Hill*, 16 Kan. App. 2d 432, however, the Court of Appeals accepted the defendant's argument that, under the facts of the case, battery was a lesser included offense of aggravated robbery, pursuant to the second prong of the *Fike* test. In reaching that conclusion, the court reviewed the following case law:

"The Kansas Supreme Court has held that battery and aggravated battery are not lesser included offenses of the crimes of robbery or aggravated robbery. *State v. Warwick*, 232 Kan. 232, 654 P.2d 403 (1982). In arriving at this decision, the Supreme Court only compared the statutory elements of the crimes. It reasoned:

'[U]nder the statutes neither robbery nor aggravated robbery require bodily contact or the actual application of force to the person of another as a necessary element for the commission of those crimes. The State may prove the crime of robbery or aggravated robbery without proving that the robber actually touched or applied force to the person of his victim. Thus, the crimes of battery and aggravated battery are not lesser included offenses of the crimes of robbery or aggravated robbery and, therefore, it is not necessary for a trial court to instruct on those crimes as lesser included offenses.' 232 Kan. at 235-36.

"Five years after *Warwick*, the Kansas Supreme Court stated that the test for determining whether a crime was a lesser included offense under K.S.A. 21-3107(2)(d) is not limited to comparison of statutory elements. *State v. Adams*, 242 Kan. 20, 22, 744 P.2d 833 (1987). Instead, the court issued the following two-prong test:

'First, the statutes defining the lesser offense and the greater offense must be compared to determine if all the elements of the former are included in the latter. Second, if that comparison fails to disclose an "identity of elements," then the court must examine the complaint/information to determine if the elements of the lesser offense are alleged, and if proof thereof is required to establish the greater offense. If it is, then it is a lesser included offense within the meaning of subparagraph (2)(d).' 242 Kan. at 23-24.

"Under the first prong of this test, battery is not a lesser included offense of aggravated robbery for the reason stated in *State v. Warwick*. Aggravated

robbery can be committed by not actually touching the victim, if it is accomplished by threat of force and use of a dangerous weapon.

"However, Hill argues that he was entitled to the instruction under the second prong of *Adams* [the *Fike* test]." 16 Kan. App. 2d at 434-35.

In *State v. Perry*, 16 Kan. App. 2d at 151-53, the defendant argued that the charges of delivery of a forged instrument and theft by deception were multiplicitous. The State argued there was no multiplicity because the two charges required proof of different elements. The Court of Appeals held that the charges were multiplicitous under the second prong of the *Fike* test: "[A] review of the charging instrument and evidence at trial shows the State necessarily proved delivery of a forged check when proving theft by deception." 16 Kan. App. 2d at 155.

Returning to the case at hand, Warren's multiplicity argument first will be analyzed under the second prong of the *Fike* test.

With regard to aggravated robbery, the complaint charged that the defendant "unlawfully, feloniously, willfully and intentionally aided and abetted another in the taking of property from the person of Pauline Willhardt, by force or threat of bodily harm to the person of Pauline Willhardt, and . . . inflicted bodily harm." With regard to aggravated battery, the complaint charged that the defendant "unlawfully, feloniously, willfully and intentionally aided and abetted another who touched or applied force, and with the intent to injure the person of Pauline Willhardt, and where great bodily harm was inflicted." At trial, the evidence showed that the taking was by force and not by threat of bodily harm. Mrs. Willhardt testified that she was walking down the street and the next thing she knew she was lying on the sidewalk. She never observed her attackers. They approached from the rear, grabbed her purse, and knocked her to the ground all in one motion. The evidence also showed Mrs. Willhardt suffered great bodily harm. With regard to aggravated robbery, the jury instruction limited the taking to "by force."

After examining the allegations contained in the complaint and the evidence adduced at trial, it is clear that the necessary elements of proof for aggravated robbery also established the necessary elements of proof for aggravated battery. See *State v. Mason*, 250 Kan. 393, Syl. ¶ 3.

We are convinced that under the second prong of the *Fike* test, aggravated battery can be a lesser included offense of aggravated robbery.

Next, the traditional multiplicity test, as set forth in *State v. Garnes*, 229 Kan. 368, 624 P.2d 448 (1981), will be applied to the facts at hand. There is no dispute that a single wrongful act provided the basis for both charges. Generally, such an act may not be used for multiple charges. The charges stemming from a single act, however, may not be multiplicitous if the charges require proof of a fact not required in proving the other.

The *Garnes* court explained proof of a fact not required in proving the other as follows:

"The essence of aggravated robbery is to deprive a person of property, an element not found in homicide. Though a homicide is committed in the course of an aggravated robbery, the offenses do not merge. *State v. Rueckert*, 221 Kan. 727, 733, 561 P.2d 850 (1977). Similarly, federal bank robbery does not merge with State charges of aggravated robbery (of an individual), aggravated kidnapping, and kidnapping. See *State v. Smith & Miller*, 224 Kan. 662, 669-70, 585 P.2d 1006 (1978), *modified on rehearing*, 225 Kan. 199, 588 P.2d 593, *cert. denied* 441 U.S. 964 (1979)." 229 Kan. at 373.

*State v. Rueckert*, 221 Kan. 727, 561 P.2d 850 (1977), and the statement quoted above provide no guidance on the instant facts. The statement was made in the context of the merger doctrine and the felony-murder rule. The *Rueckert* court stated:

"The proper test for determining whether an underlying felony merges into a homicide is whether all the elements of the felony are present in the homicide and whether the felony is a lesser included offense of the homicide. If this is not true then the felony must be a separate and distinct offense and the doctrine of merger does not apply. While the force used to commit the robbery is an integral part of the aggravated robbery, it is not the entire body of that offense. The essence of the aggravated robbery is to deprive a person of property, which is not an element of homicide. The aggravated robbery and the homicide do not merge." 221 Kan. at 733.

In *State v. Smith & Miller*, 224 Kan. 662, 669, 585 P.2d 1006 (1978), *modified* 225 Kan. 199, 588 P.2d 953, *cert. denied* 441 U.S. 964 (1979), the above quote was stated in the context of a double jeopardy issue. The defendants argued "they should not be tried for both state and federal charges arising from the same acts of violence." 224 Kan. at 669. This court responded:

"It is well settled that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which is not required by the other. [Citations omitted.]

"Applying this test to the facts at hand, we must find that the elements of proof necessary for both convictions are different. The federal charge of bank robbery requires proof that the bank in question has some federal connection, i.e., it was insured by the Federal Deposit Insurance Corporation; whereas, the state charges of aggravated robbery, aggravated kidnapping, and kidnapping require elements of proof having nothing to do with the federal crime of bank robbery. It must also be noted that the acts giving rise to the state charges were different from those triggering the federal indictment. The act of robbing the Fourth National Bank was not the same act as the aggravated robbery of Linder. Both acts took place at different times, although they were done in the course of the bank robbery." 224 Kan. at 669-70.

This case also can be distinguished from the instant case in that *Smith & Miller* involved a comparison of state and federal charges. Additionally, the *Smith & Miller* court explicitly noted that different acts occurring at different times gave rise to the state and federal charges.

If the charges in this case are not multiplicitous because one charge involves proof of a fact not required in proving the other, then it leads to the conclusion that only crimes involving identical elements can be multiplicitous. This cannot be the case because this court has found crimes involving different elements multiplicitous. See, e.g., *State v. Smith*, 245 Kan. 381, 392, 781 P.2d 666 (1989) (aggravated battery and attempted first-degree murder multiplicitous); *State v. Cathey*, 241 Kan. 715, 719-20, 741 P.2d 738 (1987) (same); *Garnes*, 229 Kan. at 373-74 (same). Why were these convictions not multiplicitous? Crimes involving different elements, if taken literally, necessarily will require proof of a fact not required in proving the other.

We are satisfied, and so hold, that aggravated robbery and aggravated battery are multiplicitous if, as in the case here, the same act of violence provided the basis for each conviction. The defendant's conviction for aiding and abetting aggravated battery is reversed and the sentence therefor vacated.

IV. Sentence

Warren claims the trial court abused its discretion in sentencing

him to a controlling term of 45 years to life. He claims the sentence is excessive in light of the facts of this case and his background.

"A sentence imposed by a trial court will not be disturbed on the ground it is excessive, provided it is within the limits prescribed by law and within the realm of discretion on the part of the trial court, and the sentence is not the result of partiality, prejudice, oppression, or corrupt motive. [Citation omitted.]" *State v. Ji*, 251 Kan. 3, 40-41, 832 P.2d 1176 (1992).

Warren's sentence is within the limits prescribed by law. His sentence for aiding and abetting aggravated robbery is the controlling sentence because it is the longest of the sentences and because the sentences for the other convictions run concurrently to the aggravated robbery sentence. An individual convicted of a class B felony, such as aggravated robbery, may be sentenced to a minimum term of 5 to 15 years and a maximum term of 20 years to life. K.S.A. 21-3427; K.S.A. 21-4501(b). Warren was sentenced to a minimum term of 15 years. The State offered evidence of Warren's three prior robbery convictions. He was paroled shortly before committing this crime. Because of these prior convictions and pursuant to the Habitual Criminal Act, the defendant's minimum sentence was tripled. See K.S.A. 1991 Supp. 21-4504(b). Thus, Warren's controlling sentence became 45 years to life.

Warren does not allege partiality, prejudice, oppression, or corrupt motive—he only alleges abuse of discretion. "The test of the trial court's abuse of discretion is whether no reasonable person would agree with the trial court. If any reasonable person would agree, appellate courts will not disturb the trial court's decision." *Taylor v. State*, 251 Kan. 272, Syl. ¶ 3, 834 P.2d 1325 (1992).

The trial court stated that Warren's sentence was based upon the defendant's "prior record and the nature of this offense, as well as the other information contained in the presentence report." The PSI report indicated "Warren tested positive for use of marijuana and cocaine" on the day the crimes for which he was convicted were committed. The defendant acknowledged using marijuana and consuming beer, wine, and other liquor; however, he denied having a drug problem. Warren was on parole

and probation for prior convictions when he committed the instant offenses.

Warren's abuse of discretion arguments fall into two categories: those directed at the setting of his 15-year minimum sentence pursuant to K.S.A. 21-4601 and K.S.A. 21-4606 and at the enhancement of his minimum sentence pursuant to K.S.A. 1991 Supp. 21-4504(b), part of the Habitual Criminal Act.

The defendant argues that the trial court failed to consider the sentencing policy set forth in K.S.A. 21-4601 and K.S.A. 21-4606 in that the trial court failed to consider his needs, *i.e.*, obtaining treatment for his drug problem. In addition to the defendant's needs, the trial court also must consider public safety and the seriousness of the defendant's crime. Furthermore, Warren denied having a drug problem.

Warren contends the seriousness of the crime committed, concern for public safety, and his prior record do not warrant the "prolonged warehousing" to which he has been sentenced and ignore the potential for rehabilitation. With regard to the seriousness of the crime committed, he suggests that because aggravated robbery requires the victim to suffer bodily harm, the trial court abused its discretion in imposing the maximum sentence. The defendant emphasizes that the victim in this case was "not the victim of a protracted and savage beating"; rather, she was "simply pushed and knocked to the ground." K.S.A. 21-4606(2)(b) requires the sentencing judge to consider "[t]he extent of the harm caused by the defendant's criminal conduct." Here, Mrs. Willhardt suffered extensive and permanent injuries.

Warren also alleges the trial court failed to consider that there were "substantial grounds tending to excuse or justify" his conduct, even if the grounds failed to establish a defense. K.S.A. 21-4606(2)(e). Warren's substantial grounds are that because of his consumption of alcoholic beverages and usage of illegal substances, he may not have been able to comprehend the nature and consequence of his conduct.

Warren acknowledges his prior record is an appropriate factor to consider in sentencing him. He argues, however, that there is no justification for considering his prior record twice: first, in setting his minimum term of 15 years and second, in tripling his sentence pursuant to the Habitual Criminal Act. The defendant

claims his "prior record is simply not sufficiently egregious to merit a 45 year minimum term."

Warren cites no authority for this argument. Moreover, his argument is contrary to the express language of the enhancement statute. K.S.A. 1991 Supp. 21-4504(b) provides in part:

"If a defendant is convicted of a felony . . . having been convicted at least twice before for any such felony offenses . . . , the trial judge shall sentence the defendant as follows, upon motion of the prosecuting attorney:

(1) The court shall fix a minimum sentence of not less than the greatest nor more than three times the greatest minimum sentence authorized . . . for the crime for which the defendant is convicted."

If a trial court cannot consider a defendant's prior record in establishing the minimum sentence *and* in enhancing the sentence, then a sentence could never be enhanced. Additionally, the Habitual Criminal Act does not require a trial court to consider the egregiousness of the defendant's prior record.

Warren's arguments are not persuasive. Although the sentence is severe, the trial court did not abuse its discretion in sentencing the defendant to the greatest possible minimum sentence allowed by law.

The defendant's conviction for aiding and abetting aggravated battery is reversed, and the trial court is instructed to vacate his sentence for that offense. Because that sentence runs concurrently to his primary term, it is not necessary to resentence the defendant. The remaining convictions and sentences are affirmed.