No. 70,249

STATE OF KANSAS, *Appellee*, v. JON G. GIBBONS, *Appellant*.

(889 P.2d 772)

Opinion filed February 3, 1995.

*Jean K. Gilles-Phillips*, assistant appellate defender, argued the cause, and *Wendy L. Rhyne Slayton*, special appellate defender, and *Jessica R. Kunen*, chief appellate defender, were on the briefs for appellant.

*Brandi L. Dunning*, assistant county attorney, argued the cause, and *Robert Forer*, county attorney, and *Robert T. Stephan*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Defendant appeals his convictions and sentencing on one count of attempted first-degree murder, a class B felony in violation of K.S.A. 1991 Supp. 21-3301 and K.S.A. 1991 Supp. 21-3401, and one count of possession of a concealed weapon, a class B misdemeanor in violation of K.S.A. 21-4201(d). Defendant claims that (1) the trial judge failed to instruct on attempted second-degree murder as a lesser included offense of attempted first-degree murder; (2) he was denied the right to present a defense; (3) evidence was improperly admitted of prior spousal abuse; (4) the prosecutor's remarks during closing argument prejudiced his right to a fair trial; (5) the judge's orientation of prospective jurors was unconstitutional; (6) he was improperly sentenced under K.S.A. 1991 Supp. 21-4618; and (7) the district court was without jurisdiction to modify his sentence.

On February 6, 1992, in Parsons, Kansas, Jon C. Gibbons shot John David Roberts. Prior to the shooting, Roberts had been involved in an extramarital affair with Gibbons' wife, Lee Ann. At the time of the shooting, Gibbons and Lee Ann were in the process of obtaining a divorce.

Gibbons had known about Lee Ann's affair with Roberts for over a year and admitted speaking to Roberts previously about the affair. Two days before the shooting, Gibbons and Lee Ann discussed their pending divorce. When Gibbons asked Lee Ann how she was going to explain Roberts to their four children, Lee Ann said she planned to introduce Roberts to the children as "mommy's new friend." Gibbons was concerned because he believed that Roberts would molest his children.

The morning of February 6, Lee Ann told Gibbons that she was going to Parsons to talk to her lawyer about the divorce. Gibbons began drinking and eventually consumed 16 small cans of beer and some whiskey. Gibbons packed his belongings, which included a .22 caliber pistol, and prepared to leave the state. When Lee Ann returned home several hours later, Gibbons accused Lee Ann of going to Parsons to see Roberts instead of seeing her lawyer. Gibbons left home and drove to his mother's house in Altamont to get a .38 caliber revolver. Gibbons then drove to Parsons and parked his truck in view of Roberts' father's

home where Roberts lived. At trial Gibbons testified that when he drove to Parsons he had not intended to shoot Roberts but only to talk to him.

After about five minutes, Roberts came out of the house. Gibbons drove his truck up in front of the house and asked Roberts if he planned to quit seeing Lee Ann. Gibbons testified that Roberts "grinned and shook his head no." Gibbons then stated, "Well, you are going to quit seeing her" or "You are going to keep your hands off of her." Gibbons took a .38 caliber pistol from the seat of his truck and shot at Roberts at least four times, hitting Roberts once in each hand. Gibbons testified that he aimed and shot at Roberts' hands to send Roberts a message to keep his hands off of Gibbons' wife and children. Gibbons repeatedly stated that he had no intent to kill Roberts.

During Gibbons' trial, the State introduced evidence that, more than a year prior to the shooting, Gibbons had pulled a gun on Roberts; that Gibbons had previously stated that he was going to kill Roberts; and that when Gibbons left his house on February 6, he had a .22 caliber pistol on the dash of his truck and was headed to find Roberts. Roberts testified that immediately prior to the shooting, Gibbons said to him, "You're dead," and that Gibbons shot at him six times before leaving. According to Roberts, the first shot hit him in his right hand; the second shot missed but hit the opposite side of the pickup bed directly across from where he was standing; the third shot, which was fired as Roberts turned and began to run toward an RV parked nearby, missed Roberts but hit the back of the RV; the fourth shot hit near Roberts' foot as he was running; the fifth shot hit him in the left hand; and a sixth shot was fired, but Roberts had no idea where it went.

Gibbons denied threatening Roberts with a gun. Gibbons testified that four shots were fired. The first shot hit Roberts in his right hand, the second shot missed Roberts and hit the bed of a pickup on which Roberts had been leaning, the third shot hit Roberts in his left hand, and the fourth shot was to discourage Roberts from firing back while Gibbons was leaving.

A friend of Gibbons' testified that he and Gibbons often practiced target shooting together and that Gibbons was an excellent

marksman and able to shoot stationary targets with a pistol from a distance of 25-30 yards. The State introduced testimony from a firearms instructor and pistol expert that it was highly improbable that Gibbons could aim for and hit Roberts' hands with two out of five shots from a distance of approximately 10 feet.

Gibbons was convicted of one count of attempted first-degree murder and one count of possession of a concealed weapon. The district court sentenced Gibbons to concurrent terms of 10 years to life for attempted first-degree murder and 6 months for possession of a concealed weapon. The court found that a firearm had been used in the commission of the attempted murder and invoked the provisions of K.S.A. 1991 Supp. 21-4618. Gibbons was sentenced to 10 years to life. Gibbons appealed.

## *Lesser Included Offense Instruction*

The defendant in a criminal prosecution has a right to have the court instruct the jury on all lesser included offenses established by substantial evidence, even though not requested by the accused. K.S.A. 21-3107(3); *State v. Arney*, 218 Kan. 369, Syl. ¶ 6, 544 P.2d 334 (1975), *cert. denied* 128 L. Ed. 2d 345 (1994). Where there is substantial evidence that the lesser degree of the offense charged had been committed, instructions relating to the lesser included offense must be given. *State v. Clardy*, 252 Kan. 541, Syl. ¶ 2, 847 P.2d 694 (1993). Substantial evidence is evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. Stated in another way, substantial evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion. *State v. Grissom*, 251 Kan. 851, 840 P.2d 1142 (1992); *State v. Garcia*, 250 Kan. 310, Syl. ¶¶ 2, 3, 827 P.2d 727 (1992). Where there is no substantial evidence applicable to the lesser degrees of the offense charged, and all of the evidence taken together shows that the offense, if committed, was clearly of the higher degree, instructions relating to the lesser degrees of the offense are not necessary. *State v. McBroom*, 252 Kan. 376, Syl. ¶ 3, 845 P.2d 654 (1992).

Gibbons first argues that the district judge erred in failing to instruct on attempted second-degree murder as a lesser included offense of attempted first-degree murder. An attempt is any overt act toward the perpetration of a crime done by a person who intends to commit such crime but fails in the perpetration thereof or is prevented or intercepted in executing such crime. K.S.A. 1991 Supp. 21-3301(a). Murder in the second degree is the malicious killing of a human being, committed without deliberation or premeditation and not in the perpetration or attempt to perpetrate a felony. K.S.A. 21-3402. For purposes of K.S.A. 21-3107(2), attempted second-degree murder is a lesser included crime of attempted first-degree murder. *State v. Dixon*, 252 Kan. 39, Syl. ¶ 2, 843 P.2d 182 (1992). See *State v. Seelke*, 221 Kan. 672, 675, 561 P.2d 869 (1977).

Gibbons relies on *State v. Dixon*, 252 Kan. 39. In that case, Dixon was charged with attempted first-degree murder. The State's theory was that Dixon shot a woman with the premeditated intent to kill. Dixon, who previously had been living with the victim, became suspicious that someone was in her house with her. After using cocaine, Dixon armed himself and went to the victim's house. The victim told Dixon to leave her alone and called him "no good" and a "bum." After being rebuffed Dixon said, "If I can't have you, can't nobody else have you" and shot the woman in the face. 252 Kan. at 41. Dixon testified that he intended to silence or injure the victim and not to kill her. The district judge refused Dixon's request to instruct the jury on the lesser offense of attempted second-degree murder. Dixon was convicted of attempted first-degree murder. Dixon appealed. The *Dixon* court, after reviewing the record, concluded that the trial court erred in failing to instruct the jury on the lesser included offense of attempted second-degree murder. 252 Kan. 39, Syl. ¶ 3.

Like Gibbons, Dixon stated that he intended to injure the victim. In each case the State's claim was that the shooting was premeditated. Both cases involve domestic disputes which may have been precipitated by each defendant's use of drugs or alcohol. Each defendant purposefully armed himself and shot the victim after a brief inflammatory exchange of words.

Unlike Dixon, who had requested an instruction on the lesser offense, Gibbons did not request an instruction on the lesser included offense of attempted second-degree murder at trial. There is evidence that Gibbons, prior to the shooting, intended to kill Roberts. Gibbons armed himself and then set out to find Roberts. Gibbons waited for Roberts to come out of his father's residence. Within seconds of speaking to Roberts, Gibbons fired at least four bullets at Roberts. Unlike Dixon, Gibbons repeatedly testified during the trial that he never intended to kill Roberts. Gibbons testified that he intentionally shot Roberts in the hands to give him the message to keep his hands off Gibbons' family. Gibbons' argument on appeal that the shooting was malicious but without deliberation or premeditation is inconsistent with his defense at trial.

The evidence does not establish that Gibbons intended to kill Roberts on an impulse. Under the facts the jury had only two logical choices: it could either believe the State's theory that Gibbons attempted to kill Roberts with premeditation or believe Gibbons' statement that he did not intend to kill Roberts when he shot him. Because there was no substantial evidence that a lesser offense had been committed, the trial judge had no duty to instruct on a lesser crime. See *State v. Dixon,* 248 Kan. 776, Syl. ¶ 1, 811 P.2d 1153 (1991).

### The Right to Present a Defense

Prior to trial, the State filed a motion in limine to restrict defense counsel from presenting evidence concerning any prior wrongdoing, arrest, investigation, conviction, civil court proceeding, drinking habits, or drug usage by Roberts. The parties eventually agreed that K.S.A. 60-421 prohibited the admission of evidence that a witness had been convicted of a crime not involving dishonesty or false statement for the purpose of impairing the witness' credibility.

When defense counsel asked Gibbons why he was concerned for his children, the prosecutor initiated an extended colloquy out of the hearing of the jury regarding whether the defense could present evidence of Gibbons' state of mind when he shot Roberts.

Gibbons' attorney indicated that his client would testify that he believed Roberts would sexually molest his children. The prosecutor objected to Gibbons testifying as to how Gibbons learned of Roberts' alleged perversions. Defense counsel noted that Gibbons had already testified that he was concerned for his children because of Roberts' perversions and stated that Gibbons would testify that his concern regarding Roberts' perversions dominated Gibbons' state of mind at the time of the shooting. The court stated:

"All right. The one thing I don't want you to do is to—if you want to find out what was in his mind, that's fine. I think state of mind is relevant. But I don't want you to dwell on this and try to paint a picture that we know is probably not a true picture. And I'm not suggesting that you'll do that. But this witness, he's already in an emotional state, and I don't know what to anticipate from him in that state. So, anyway, I'll let you go ahead."

Defense counsel did not comment or object to the judge's ruling. In the presence of the jury, and after cautioning Gibbons to "just answer the question," defense counsel asked Gibbons whether he had concern that his children might be harmed if Roberts moved in with Lee Ann and whether that concern was based upon something Roberts had told him. Gibbons answered "yes" to both questions.

On appeal, Gibbons complains that he was not allowed to testify as to what caused him to believe that Roberts was perverted and would molest his children. Gibbons argues that the trial court's improper limitation of this testimony encroached upon his constitutional rights to present a defense and to receive a fair trial.

Any evidence which has a tendency in reason to establish a material fact is relevant and may be admitted into evidence. There is no presumption that the exclusion of evidence which was properly admissible and relevant to an issue in the case is harmless. If any presumption is to be indulged, the presumption would be that a just result could hardly be expected unless the factfinder has before it all of the relevant evidence which it is entitled to consider. *Dawson v. Associates Financial Services Co.*, 215 Kan. 814, Syl. ¶¶ 3, 4, 529 P.2d 104 (1974).

Gibbons, citing *Arizona v. Fulminante*, 499 U.S. 279, 113 L. Ed. 2d 302, 111 S. Ct. 1246 (1991), claims that the standard of

review on appeal of the denial of a federal constitutional right to a fair trial is de novo. In *Fulminante,* a state criminal defendant, while in prison on an unrelated federal charge, confessed to a fellow inmate who was a paid informant for the Federal Bureau of Investigation. The confession was found to be coerced, involuntary, and a violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. The United States Supreme Court noted that before a federal constitutional error can be held harmless, a court must be able to declare a belief that the error was harmless beyond a reasonable doubt. 279 U.S. at 295. The Court noted that when reviewing a state court's decision as to the voluntariness of a criminal defendant's confession, it normally gives great deference to the factual findings of the state court. The ultimate issue of voluntariness, however, is a legal question requiring independent federal determination. 279 U.S. at 287. *Fulminante* states our standard of appellate review.

Gibbons made no proffer of the evidence he claims was excluded by the trial judge.

"A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence unless it appears of record that the proponent of the evidence either made known the substance of the evidence in a form and by a method approved by the judge, or indicated the substance of the expected evidence by questions indicating the desired answers." K.S.A. 60-405.

Under K.S.A. 60-405, the proponent of excluded evidence must make known the "substance" of the expected evidence in a proffer of such evidence.

We disagree with Gibbons' claim that the judge prohibited him from presenting a defense. Gibbons testified that he was concerned about Roberts having contact with his children because of Roberts' perversions. Gibbons based this concern on statements Roberts had made to him. The district court did not specifically exclude any evidence that Gibbons attempted to introduce at trial. The district court allowed defense counsel to inquire into Gibbons' state of mind. Gibbons testified that he was concerned about Roberts' perversions. Following the side bar con-

ference, defense counsel approached the question in another way by asking whether Gibbons feared Roberts would harm his children. This question avoided discussion of the specifics of how or why Gibbons formed his belief. The judge did not require defense counsel to change his line of questioning, nor was there a proffer of testimony by the defendant of the evidence excluded. Gibbons was not denied the right to present an integral part of his theory of defense.

### Evidence of Prior Spousal Abuse

Gibbons asserts that six references to prior spousal abuse were erroneously admitted into evidence in violation of K.S.A. 60-455. K.S.A. 60-455 prohibits the admission of evidence that a person committed a crime or civil wrong on a specified occasion to prove that person's disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion. Gibbons notes that such evidence is admissible only when relevant to prove some other material fact, including motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

During the trial Gibbons objected to only one of the six references to his prior abuse of his wife. Under our rules of procedure, a verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, because of the erroneous admission of evidence unless there is an objection to the evidence timely interposed and the specific ground of objection is stated. K.S.A. 60-404. In the one instance objected to, Lee Ann testified that she was fearful of Gibbons' handgun because he had pulled it on her in the past. Defense counsel objected on the basis that the statement was "inflammatory" and Gibbons was "not charged with that." The judge overruled the objection.

Ordinarily, physical abuse of a spouse may be admitted into evidence independent of 60-455 and requires no limiting instruction. *State v. Hedger*, 248 Kan. 815, 811 P.2d 1170 (1991). The evidence is admissible to establish the relationship of the parties,

to show the existence of a continuing course of conduct between the parties, to corroborate the testimony of the witnesses, or to show motive or intent. *State v. McClanahan*, 254 Kan. 104, 117, 865 P.2d 1021 (1993). Lee Ann's statement was not admitted to show the course of conduct between her and her husband and should not have been admitted into evidence.

Even though Lee Ann's statements were erroneously admitted into evidence, reversal is not required unless the statements were of such a nature as to affect the outcome of the trial and deny the defendant substantial justice. See *State v. Walker*, 239 Kan. 635, 644, 722 P.2d 556 (1986). A review of the record shows that the erroneous admission of the evidence did not affect the outcome of the trial. The defendant was not denied his right to a fair trial.

### Prosecutor's Remarks

At the end of his closing argument, the prosecutor stated:

"Now, ladies and gentlemen, I'm going to ask you to retire to the jury room. Going to ask you to consider all that you've heard, all that you've seen, all the evidence that has been produced. I want you to consider, too, you are the only people who will determine this case. You are the only people who can judge the facts.

"Fact is, you can acquit the defendant, and he can take his gun and go back to his truck, and he can roam the streets again. Those are the two alternatives, the only choices you really have.

"I don't think that is the result that we want under these circumstances. I ask you, therefore, on behalf of the State of Kansas to now perform the duty that you have been charged with by law. I ask you to retire to the jury room, and to return a verdict of guilty of both counts. Thank you."

No objection was lodged to the prosecutor's remarks. After the jury retired to begin deliberations, defense counsel requested that the judge grant a mistrial, arguing that the prosecutor's statements improperly suggested that if the jury did not convict Gibbons, he would commit further crimes. The trial judge denied the defendant's motion for a mistrial.

The trial court may terminate the trial and order a mistrial at any time that it finds termination is necessary because prejudicial conduct makes it impossible to proceed with the trial without injustice to either the defendant or the prosecution. K.S.A. 22-

3423(1)(c). The State notes that under the statute, the declaration of a mistrial is a matter entrusted to the trial court's discretion. It claims that the standard of review on appeal is abuse of discretion, citing *State v. Bradford*, 254 Kan. 133, Syl. ¶ 4, 864 Kan. 680 (1993). The State observes that reversible error cannot be predicated upon a complaint of misconduct of counsel during closing argument where no contemporaneous objection is lodged. See *State v. Pioletti*, 246 Kan. 49, 67, 785 P.2d 963 (1990).

Contrary to the State's reasoning, Gibbons does not argue that the district court abused its discretion in denying his motion for mistrial, but instead argues that his constitutional right to a fair trial was violated when the judge failed to declare a mistrial. Gibbons contends that, although he did not object to the prosecutor's statement or request that the judge admonish the jury, the judge's failure to mitigate the effect of the prosecutor's statement by instructing the jury to disregard the comment is subject to appellate review.

Gibbons refers this court to the case of *State v. Netherton*, 128 Kan. 564, 279 Pac. 19 (1929). In *Netherton*, no objection was lodged against the prosecutor's offensive language during closing argument until after the jury had retired. In reversing the defendant's conviction, the *Netherton* court observed that the failure of the court to admonish the jury to disregard these remarks was error, even if the jury had retired from the room before the request was made. 128 Kan. at 575. A judge has a duty to intervene on the judge's own motion where counsel's remarks exceed the limits of professional freedom of discussion. See *State v. Wilson*, 188 Kan. 67, 73, 360 P.2d 1092 (1961); *Netherton*, 128 Kan. at 573; *State v. Gutekunst*, 24 Kan. 252, 254 (1880).

This court has previously held certain statements by the prosecution during closing argument warranted reversal. See *State v. Ryan*, 141 Kan. 549, 42 P.2d 591 (1935); *State v. Baker*, 57 Kan. 541, 46 Pac. 947 (1896). In both *Ryan* and *Baker*, this court held the trial court erred in overruling defendant's objection to the improper remarks of the prosecutor. Other cases amply demonstrate that, upon objection, a district court's admonition to the jury to disregard a prosecutor's prejudicial statements may cure

the error. See *State v. Pursley*, 238 Kan. 253, 265, 710 P.2d 1231 (1985); *State v. Johnson*, 229 Kan. 42, 45-46, 621 P.2d 992 (1981); *State v. Perales*, 220 Kan. 777, 780, 556 P.2d 172 (1976); *State v. Watkins*, 219 Kan. 81, Syl. ¶ 6, 547 P.2d 810 (1976); *State v. Warbritton*, 215 Kan. 534, Syl. ¶ 1, 527 P.2d 1050 (1974).

The State contends that the prosecutor's statements were not outside the facts in evidence and were not abusive, improper, or intended to create prejudice. The State further contends that, because of the overwhelming evidence against Gibbons, even if the statements made by the prosecutor during closing argument were considered improper, they were not so prejudicial as to affect Gibbons' constitutional right to a fair trial. The State cites *State v. Baker*, 219 Kan. 854, 549 P.2d 911 (1976), as authority that the prosecutor's statements were not improper. In *Baker*, this court stated that in summing up a case before a jury, counsel may not introduce or comment on facts outside the evidence, but reasonable inferences may be drawn from the evidence and considerable latitude is allowed. It noted that "counsel may appeal to the jury with all the power and persuasiveness his learning, skill and experience enable him to use." 219 Kan. 854, Syl. ¶ 9.

"Before an objectionable statement made by a prosecutor on matters outside the record will entitle the accused to a reversal of his or her conviction, it first must appear that it was injurious to the accused and was likely to affect the jurors to the accused's prejudice. Improper remarks in closing argument are grounds for reversal only when they are so gross and flagrant as to prejudice the jury against the accused and deny him or her a fair trial." *State v. Whitaker*, 255 Kan. 118, Syl. ¶ 7, 872 P.2d 278 (1994).

The prosecutor's statements in closing argument transcended the boundaries of fair discussion of the evidence and improperly implied that if the jury did not convict Gibbons, he would commit further crimes of a similar nature. The prosecutor's statements were made just before the jury retired to begin deliberations. The question is whether, under the circumstances, the prosecutor's comments were so gross and flagrant as to prejudice the jury against Gibbons and deny him a fair trial.

"In deciding whether improper remarks by the prosecution during closing argument constitute harmless error, the reviewing

court must be able to find that the error had little, if any, likelihood of changing the result of the trial. Such a belief must be declared beyond a reasonable doubt." *State v. Zamora*, 247 Kan. 684, 690, 803 P.2d 568 (1990). Gibbons did not deny that he shot the victim, and his defense to the crime charged was that he intentionally shot the victim in the hands and did not intend to kill the victim. Under the facts of this case, we can say beyond any reasonable doubt that the prosecutor's remark had little, if any, likelihood of changing the result of the trial.

### Orientation of Prospective Jurors

During the judge's orientation of prospective jurors, the judge advised the venire that each party would present evidence to support its claims. Defense counsel argued that the court's statement improperly shifted the burden of proof from the State and requested that the jury panel be discharged. The judge denied the motion to discharge, stating: "Well, the orientation is a general orientation. It's not intended to instruct them on any particular case." Voir dire of the prospective jurors then commenced. On appeal, Gibbons argues that the judge's statement during orientation of the prospective jurors denied Gibbons his constitutional right to a fair trial.

As authority the defendant cites *State v. Johnson*, 233 Kan. 981, 666 P.2d 706 (1983). In *Johnson*, the trial judge instructed the jury that making, drawing, issuing, or delivering of an insufficient funds check was prima facie evidence of intent to defraud, which may be overcome by evidence to the contrary. The defendant argued that the judge's instruction as to giving a worthless check improperly shifted the burden to the defendant and violated the Fourteenth Amendment Due Process Clause requirement that the State prove every element of a criminal offense beyond a reasonable doubt. The *Johnson* court observed that an instruction as to the nature and extent of a presumption must not shift the burden of proof to the defendant. It noted that an instruction which could reasonably lead the jury to believe that a presumption is conclusive or that the burden to disprove an element of the crime rests with the defendant is unconstitutional. It found that

the instruction could have led the jury to believe that the burden was on the defendant to overcome the rebuttable presumption of intent to defraud. 233 Kan. at 986. The court reversed and remanded the case for new trial.

Jury instructions are to be considered together and read as a whole without isolating any one instruction. If the instructions properly and fairly state the law as applied to the facts in the case, and if the jury could not reasonably have been misled by them, then the instructions do not constitute reversible error although they may be in some small way erroneous. *State v. Walker*, 252 Kan. 279, 295, 845 P.2d 1 (1993). The record shows that an instruction clarifying the State's burden of proof was given prior to and subsequent to the presentation of evidence.

We agree that an instruction which may reasonably lead the jury to believe that the burden to disprove an element of the crime charged rests with the defendant is unconstitutional. The rationale of *Johnson* does not apply here, however, because the judge's statement to the prospective jurors was not an instruction. The jury could not reasonably have been misled by the judge's statement, and it does not constitute reversible error.

### Sentencing

Gibbons argues that attempted first-degree murder is not an article 34 crime and is therefore not subject to application of the firearms statute, K.S.A. 1991 Supp. 21-4618. This court's review of conclusions of law is unlimited.

This issue was addressed by the Court of Appeals in *Sutton v. State*, 6 Kan. App. 2d 831, 636 P.2d 187 (1981), *rev. denied* 231 Kan. 819 (1982). Sutton argued that because only murder is defined in K.S.A. 21-3401, the crime of attempted murder was not "set out in article 34 of chapter 21 of the Kansas Statutes Annotated" as required under 21-4618. The Court of Appeals agreed, holding that 21-4618 is plain and unambiguous. It observed that the intent of the legislature expressed therein was for that statute to apply only to article 34 crimes. It held that attempted murder was not an article 34 crime; therefore, 21-4618 was not applicable to attempts. 6 Kan. App. 2d at 832.

This court, in *State v. Smith*, 232 Kan. 284, 654 P.2d 929 (1982), considered whether the trial court erred in sentencing a defendant under 21-4618 for attempted aggravated robbery. The *Smith* court adopted the rationale of *Sutton,* finding it to be logical and persuasive, and noting that the State apparently agreed, as it had conceded that the sentencing under 21-4618 for an attempted aggravated robbery was error. 232 Kan. at 286. The State asserts that it "does not agree with the reasoning, but realizes that *Smith* is controlling." The State fails to present any analysis as to why this court should overrule *Smith*.

*Smith* controls. Because attempted murder is not a crime set out in article 34 of chapter 21 of the Kansas Statutes Annotated, under K.S.A. 1991 Supp. 21-4618, Gibbons' sentence must be set aside and the case remanded for resentencing.

### Jurisdiction To Modify Sentence

A defendant may appeal from the judgment of the district court not later than 10 days after the expiration of the district court's power to modify the sentence. K.S.A. 22-3608. When an appeal is taken and determined adversely to the defendant, the court may modify a sentence within 120 days after it is imposed. K.S.A. 1991 Supp. 21-4603(d)(1). If an appeal is taken and determined adversely to the defendant, the defendant's sentence may be modified within 120 days after the receipt of the mandate from the appellate court. K.S.A. 1991 Supp. 21-4603(d)(2).

The district court sentenced Gibbons on June 10, 1992. A notice of appeal was filed on June 18, 1992. Approximately four months after the notice of appeal was filed, a motion for modification of sentence was filed. Gibbons argues that the district court did not have jurisdiction to consider his motion for sentence modification because notice of appeal had already been filed and asserts that he is entitled to file a motion requesting sentence modification after the completion of this appeal. The State fails to address the merits of this issue, arguing instead that the issue is moot because the original sentence was improper.

When a criminal appeal is docketed, the trial court's jurisdiction ends and the sentence may then be modified only after the man-

date from the Supreme Court or Court of Appeals is returned, or by motion to remand temporarily for modification of sentence. *State v. Dedman*, 230 Kan. 793, Syl. ¶ 2, 640 P.2d 1266 (1982). The filing of a notice of appeal divested the district court of jurisdiction to hear a motion to modify sentence. The district court did not have jurisdiction to consider Gibbons' request to reduce his minimum sentence.

Affirmed in part, reversed in part, and remanded for resentencing.