(894 P.2d 243)
No. 70,785

STATE OF KANSAS, *Appellee,* v. GARY EASTRIDGE, *Appellant.*

Opinion filed April 28, 1995.

*Wendy L. Rhyne Slayton*, special appellate defender, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Michael Warner*, assistant district attorney, *Darrell L. Smith*, assistant district attorney, *Paul J. Morrison*, district attorney, and *Robert T. Stephan*, attorney general, for appellee.

Before BRISCOE, C.J., ROYSE and GREEN, JJ.

ROYSE, J.: Gary Eastridge was convicted by a jury of one count of arson, one count of conspiracy to commit arson, and one count of misdemeanor theft. He was sentenced to a controlling term of 8 to 24 years. He appeals his convictions and sentence, arguing (1) the convictions of arson and conspiracy to commit arson are unconstitutionally multiplicitous; (2) the district court erred in failing to intervene during the State's closing argument; (3) the district court erred in admitting evidence of prior crimes committed by Eastridge; and (4) the district court erred in enhancing his sentence under the Habitual Criminal Act, K.S.A. 1992 Supp. 21-4504(c).

Firefighters were called to Paula Combs' home in Olathe during the evening of January 23, 1992. After they put out the fire, the firefighters discovered two beer bottles in the garage. Both bottles were stopped with rag wicks and contained gasoline and an unknown white substance. Combs told the police that she believed Eastridge was responsible for the fire.

Eastridge was charged with arson and conspiracy to commit arson in connection with the fire. In addition, he was charged with misdemeanor theft for taking property belonging to Combs without her permission. The theft allegedly occurred a week before the fire. Following a trial, a jury found Eastridge guilty of all three offenses. The district court applied the Habitual Criminal Act to the arson conviction and imposed a controlling sentence of 8 to 24 years.

## MULTIPLICITY

Eastridge's first argument on appeal is that the convictions of

arson and conspiracy to commit arson are unconstitutionally multiplicitous. Eastridge did not raise this issue in the district court. He correctly notes, however, that multiplicity may be raised for the first time on appeal if necessary to serve the ends of justice or to prevent denial of fundamental rights. *State v. Dubish*, 234 Kan. 708, 718, 675 P.2d 877 (1984).

The Supreme Court has stated that multiplicity is "the charging of a single offense in several counts of a complaint or information." *State v. Freeman*, 236 Kan. 274, 280, 689 P.2d 885 (1984). The primary concern with multiplicity is that it creates the potential for multiple punishments for a single offense, which is prohibited by the double jeopardy clause of the Fifth Amendment of the United States Constitution and section 10 of the Kansas Constitution Bill of Rights. *State v. Edwards*, 250 Kan. 320, 329, 826 P.2d 1355 (1992).

General principles regarding multiplicity were listed in *State v. Garnes*, 229 Kan. 368, 373, 624 P.2d 448 (1981):

"(1) A single offense may not be divided into separate parts; generally, a single wrongful act may not furnish the basis for more than one criminal prosecution.

. . . .

(2) If each offense charged requires proof of a fact not required in proving the other, the offenses do not merge.

. . . .

(3) Where offenses are committed separately and severally, at different times and at different places, they cannot be said to arise out of a single wrongful act."

See *State v. Warren*, 252 Kan. 169, 175, 843 P.2d 224 (1992); *State v. Woods*, 250 Kan. 109, 119-20, 825 P.2d 514, *cert. denied* 121 L. Ed. 2d 100 (1992).

The traditional test of whether charged offenses are multiplicitous is whether each charge requires proof of a fact not required in proving the other. *State v. Crawford*, 253 Kan. 629, Syl. ¶ 5, 861 P.2d 791 (1993); *State v. Mason*, 250 Kan. 393, 398, 827 P.2d 748, (1992); *State v. Scott*, 250 Kan. 350, 356, 827 P.2d 733 (1992); *State v. Woods*, 250 Kan. at 119; *State v. Zamora*, 247 Kan. 684, 694, 803 P.2d 568 (1990); *State v. Hobson*, 234 Kan. 133, 137, 671 P.2d 1365 (1983).

With limited exceptions, the general rule is that a conspiracy to commit a crime is an offense separate and distinct from the crime that is the object of the conspiracy. *State v. Matson*, 14 Kan. App. 2d 632, 635, 798 P.2d 488 (1990), *rev. denied* 249 Kan. 777 (1991). See, *e.g., State v. Hobson*, 234 Kan. at 138. When the traditional test is applied in this case, it is apparent that the convictions for arson and conspiracy to commit arson were not multiplicitous.

In this case, the jury was instructed that the charge of arson required the State to prove the following elements:

"1. That the defendant intentionally damaged a building, to-wit: a residential house located at 12150 Timberlane Road by means of fire or explosive;

2. That the defendant did so without the consent of Paula E. Combs; and

3. That this act occurred on or about the 23rd day of January, 1992, in Johnson County, Kansas."

Additionally, the jury was instructed that the charge of conspiracy to commit arson required proof of the following elements:

"1. That the defendant knowingly and intentionally agreed with Eric Riley to assist in the commission of the crime of arson;

2. That the defendant did so agree with the intent that the crime of arson be committed;

3. That the defendant or any party to the agreement acted in the furtherance of the agreement by transporting six long-neck beer bottles filled with gasoline and rag wicks by automobile to a location of 12150 Tim[b]erlane, Olathe, Johnson County, Kansas. Further, on January 23, 1992, the defendant acted in furtherance of the agreement by throwing a gas-filled beer bottle, commonly termed a [M]olotov cocktail, into the house of Paula Combs;

4. That this act occurred on or about the 23rd day of January, 1992, in Johnson County, Kansas."

A review of the instructions makes clear that arson requires proof of damage by means of fire or explosion, an element not required to prove conspiracy. On the other hand, conspiracy requires proof of an agreement, an element not required to prove arson. In fact, the essence of conspiracy is the agreement. *Matson*, 14 Kan. App. 2d at 635. Because each charge requires proof of a fact not required in proving the other, the charges are not multiplicitous.

In support of his multiplicity contention, Eastridge relies on the two-prong test set forth in *State v. Fike*, 243 Kan. 365, 368,

757 P.2d 724 (1988), for determining whether a crime is a lesser included offense. The Supreme Court did recently examine a multiplicity issue under the second prong of the *Fike* test in *State v. Warren*, 252 Kan. at 176. The court commented: "There is no doubt the concept[s] of multiplicity and included offenses are related. Case law does not explain clearly the relationship between the two concepts and increasingly is blurring any distinction." 252 Kan. at 177.

Fike described the two-prong test for lesser included crimes under K.S.A. 21-3107(2)(d) as follows:

"The first step is to determine whether all of the statutory elements of the alleged lesser included crime are among the statutory elements required to prove the crime charged. If so, the lesser crime is a lesser included crime of the crime charged. Under the second prong of the test, even if the statutory elements of the lesser crime are not all included in the statutory elements of the crime charged, the lesser crime may still be a lesser included crime under K.S.A. 1987 Supp. 21-3107(2)(d) if the factual allegations of the charging document and the evidence required to be adduced at trial in order to prove the crime charged would also necessarily prove the lesser crime." 243 Kan. 365, Syl. ¶ 1.

Application of the *Fike* test in this case produces the same result reached under the traditional test: the charges of arson and conspiracy to commit arson were not multiplicitous. Arson is a class C felony, K.S.A. 21-3718, and conspiracy to commit arson is a class E felony, K.S.A. 21-3302. Conspiracy to commit arson is not a lesser included offense of arson under the first prong of *Fike*, because conspiracy requires proof of an element not required to prove arson (an agreement).

Under the second prong of the *Fike* test, the factual allegations in the charging document and the evidence required to prove arson did not necessarily prove conspiracy. The complaint alleged that Eastridge did unlawfully, knowingly, willfully, and feloniously damage a residence, without the consent of Combs, by means of fire. The State presented evidence that Eastridge threw a Molotov cocktail into Combs' garage window, causing a fire. The evidence required to establish arson in no way relied on evidence of an agreement. Thus, in proving the arson charge, the State did not necessarily prove the crime of conspiracy to commit arson. The convictions are not multiplicitous.

Eastridge argues that the State proved conspiracy by proving the intent element of the crime of arson. This argument is without merit. First, the second prong of *Fike* requires an examination of the evidence which "must be adduced at trial," 243 Kan. at 368, to prove arson. "Multiplicity does not depend on whether the facts proved at trial are actually used to support the convictions of both offenses; rather, multiplicity turns on whether the *necessary* elements of proof of the one crime are included in the other." (Emphasis added.) *State v. Mason*, 250 Kan. 393, Syl. ¶ 3; see *State v. Hobson*, 234 Kan. at 140.

Second, the State presented testimony that Eastridge said he had thrown a beer bottle at the house, it had bounced off the house, and he had retrieved it. Eastridge had recounted relighting the beer bottle, throwing it through the garage window, seeing the flames, and running away. This evidence established intent to commit arson, without regard to any evidence of agreement which may also have been introduced. Thus, the evidence necessary to establish intent to commit arson did not necessarily also prove conspiracy. The mere fact the evidence of a conspiracy was also presented at trial does not warrant the conclusion the charges are multiplicitous.

## CLOSING ARGUMENT

Eastridge's second argument on appeal is that the district court erred by failing to intervene when the State made an improper closing argument. Eastridge takes the position that the prosecutor's closing statement deprived him of a fair trial. Eastridge acknowledges that he did not object to any of the closing argument at trial.

The Supreme Court has frequently commented that in criminal trials,

"the prosecution is given wide latitude in language and in manner or presentation of closing argument as long as it is consistent with the evidence adduced. Improper remarks made by the prosecutor in closing argument are grounds for reversal only when they are so gross and flagrant as to prejudice the jury against the defendant and to deny the defendant a fair trial. [Citation omitted.]

. . . .

"In closing argument to the jury, the prosecutor should not use statements calculated to inflame the passions or prejudices of the jury. The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence by injecting issues broader than the guilt or innocence of the accused under the controlling law or by making predictions of the consequences of the jury's verdict. [Citation omitted.] In closing argument, an attorney may indulge in impassioned bursts of oratory or may use picturesque language as long as he or she introduces no facts not disclosed by the evidence. [Citation omitted.]

"In summing up a case before a jury, the prosecutor may not introduce or comment on the facts outside the evidence, but reasonable inferences may be drawn from the evidence and considerable latitude is allowed in discussing it." *State v. Duke,* 256 Kan. 703, 718-20, 887 P.2d 110 (1994).

See *State v. Hays,* 256 Kan. 48, 68, 883 P.2d 1093 (1994); *State v. Borthwick,* 255 Kan. 899, 919, 880 P.2d 1261 (1994); *State v. Ruff,* 252 Kan. 625, 633, 847 P.2d 1258 (1993).

The Supreme Court has noted repeatedly the rule that reversible error may not be predicated upon a complaint of misconduct of counsel during argument where no contemporaneous objection to that conduct is lodged at trial. *State v. Reed,* 256 Kan. 547, Syl. ¶ 8, 886 P.2d 854 (1994); *State v. Sexton,* 256 Kan. 344, Syl. ¶ 7, 886 P.2d 811 (1994); *State v. Crabtree,* 248 Kan. 33, 37, 805 P.2d 1 (1991); see *State v. Murrell,* 215 Kan. 10, 12-13, 523 P.2d 348 (1974) (rule "firmly established").

Eastridge counters with a statement which appears almost as often in Supreme Court decisions, describing

" 'the duty of the district courts in jury trials to interfere in all cases of their own motion, where counsel forget themselves so far as to exceed the limits of professional freedom of discussion. Where counsel refers to pertinent facts not before the jury, or appeals to prejudices foreign to the case, it is the duty of the court to stop him then and there. The court need not and ought not to wait to hear objection from opposing counsel. The dignity of the court, the decorum of the trial, the interest of truth and justice forbid license of speech in arguments to jurors outside of the proper scope of professional discussion.' " *State v. Wilson,* 188 Kan. 67, 73, 360 P.2d 1092 (1961).

See *State v. Gibbons,* 256 Kan. 951, 963-64, 889 P.2d 772 (1995); *State v. Green,* 254 Kan. 669, 685, 867 P.2d 366 (1994); *Ruff,* 252 Kan. at 634-35; see also *State v. Netherton,* 128 Kan. 564, 573, 279 Pac. 19 (1929) (objection lodged after jury had retired).

In addition, Eastridge points out that our Supreme Court in *Gibbons*, 256 Kan. at 961, recently examined a claim of improper closing argument where no objection was lodged at trial. In *Gibbons*, 256 Kan. at 962, the defendant framed the issue as a question whether he was denied a fair trial by the trial court's refusal to grant a mistrial. We note in passing that Eastridge made no request for mistrial in this case.

Eastridge complains that the State in its closing argument characterized Eastridge and the witnesses who corroborated his alibi as liars. Eastridge also says that by commenting on the credibility of the defense witnesses and telling the jury that those witnesses were lying, the State went outside the evidence and interjected its own opinion.

The Supreme Court recently discussed a similar argument. In *State v. Whitaker*, 255 Kan. 118, 132, 872 P.2d 278 (1994), the defendant argued for the first time on appeal that "comments by the prosecuting attorney vouching for the complaining witnesses' credibility and casting doubt on Whitaker's veracity when testifying were improper comments." Whitaker also argued that the comments went beyond the evidence and prejudiced his right to a fair trial. 255 Kan. at 132-33.

The Supreme Court examined the language used by the prosecuting attorney in discussing the inconsistencies in Whitaker's testimony:

" 'You were lied to during this trial. Somebody sat on that witness stand, took [an] oath to tell the truth, looked at all of you and out and out lied. Was it [the alleged victims] Trotter and Carr? Well now, let's see. They both told the same story. They didn't have time to concoct it. The police are on the scene like that (indicating) because an officer is shot. And strangely enough all the physical evidence backs up their story. We find the handcuffs, we find the chains, we find the tape, we find Ford Carr's shoes where he has bailed out of the car, and we find the 'phone cover, we find everything. There are 90 some exhibits that all match up with what Trotter and Carr told you happened. Even the defendant admits being there. There [are] a few problems that he couldn't deal with when he testified. Did someone lie? Yeah. He is sitting right there (indicating). You see, the defendant told you—although he had studied the police reports, there was a couple of oops he made while testifying. . . .

'And the empty holster? You've got to love the empty holster. He wants you to believe that he is being threatened somehow by Aldred Neal, although he

wasn't afraid, he wasn't scared, he knew he wasn't going to shoot him. But, he was being threatened. He gets away, goes into his house, clips on a holster and then can't find his gun. And he gets back into the car with Aldred Neal who has a gun and who he is afraid of and wants Aldred Neal to see his holster and wonder if he has a gun? Come on. He had the holster because he had the gun. It fits the holster. There is no reason for Aldred Neal to have a .32. That is just a blatant lie. Afraid of him and hides in his house?

'The one thing that he couldn't handle when he testified, the one lie he hadn't prepared, didn't know how to deal with was, there was Marsha Woltman and Lee and Tom York. He couldn't fit it into his story. You know, Mr. York sat there and told you, I am not a hundred percent sure, but that is the guy, the one in the purple shirt standing next to the guy with the briefcase, the guy in the purple shirt doing all the talking that we sent down to Ford Carr's house where they opened a briefcase, pounded on the door and ultimately walked away. He was there and he just wants you just to ignore that. Mysteriously it just couldn't have been him. And he can't tell you who it was. He spends all the time before this happens and all the time after this happens with Aldred Neal, but somehow in this little 15 minute time span someone else dressed like him, looking exactly like him, shows up with Aldred Neal at Ford Carr's house. He can't explain that because he's lying to you. He has sat here and bold face lied to you.

. . . .

'Do you want to put any weight into what a liar tells you on the witness stand throughout his testimony? There are 20 some witnesses, 90 some exhibits, that also support what Trotter and Carr told you, as well as Officer Don Taylor. And there is no doubt that they planned and jointly committed each and every one of these crimes they are charged with.' " *State v. Whitaker*, 255 Kan. at 133-34.

After summarizing the relevant case law, the court held: "In this case, the comments improperly characterized Whitaker as a liar but did not so prejudice the jury against him as to deny him a fair trial." 255 Kan. at 135.

The comments challenged by Eastridge are similar to those discussed in *Whitaker*. The prosecuting attorney reminded the jury it would be comparing witnesses and evaluating their credibility. The prosecutor reiterated the testimony of the State's witnesses: Eastridge talked about putting gasoline and hair conditioner into beer bottles and throwing it at Combs' house; Eastridge said they should wear gloves to avoid leaving fingerprints; Eastridge took a pair of gloves and a pistol when he left Harrisonville, Missouri; Eastridge said they would get gasoline along

the way; upon his return, Eastridge stated that they had gone to Combs' house and thrown gasoline-filled bottles at her house; and Eastridge stated they left when they determined the house was on fire. The prosecuting attorney pointed out that Eastridge and the defense witnesses claimed Eastridge was in Garden City, Missouri, at the time of the fire.

Obviously, Eastridge could not be in two places at once. The State's position throughout the trial was that the Eastridge alibi was a fabrication. The prosecutor argued in closing that Eastridge's witnesses were liars and they had lied to the jury. The prosecutor further argued it was unlikely the State's witnesses had concocted their version of the events in order to get even with Eastridge and cover up Combs' destruction of her own house.

*Whitaker* seems to require the conclusion that the State's closing argument improperly characterized Eastridge as a liar. 255 Kan. at 135. In light of the entire record, however, the State's closing did not so prejudice the jury as to deny Eastridge a fair trial. See *U.S. v. Moore*, 11 F.3d 475 (4th Cir. 1993) (no prejudice where improper closing argument did not mislead jury); *U.S. v. Tullos*, 868 F.2d 689 (5th Cir. 1989) (characterization of defendant as a liar in closing argument was based on the evidence); *U.S. v. Sblendorio*, 830 F.2d 1382, 1395 (7th Cir. 1987) ( characterizing defense as "phony," "bogus," "smoke screen" and "lame" did not deny defendant a fair trial); *U.S. v. Moore*, 710 F.2d 157, 160 (4th Cir. 1983) (no prejudice where jury had been instructed that credibility was for it to determine).

## EVIDENCE OF PRIOR CRIMES

Eastridge argues on appeal that the district court violated his right to a fair trial by admitting evidence of prior crimes and wrongdoing contrary to K.S.A. 60-455. Eastridge complains of three particular statements contained in the record of trial: (1) accounts of statements by Combs to the police that she was afraid of Eastridge because he had bragged about burning down other homes, "to me he's dangerous. . . . He's a criminal"; (2) a witness's statement that he could not sleep after the fire, because "I'd never been around anybody that's done something like this.

Never been around anybody that's ever killed anybody"; (3) and testimony that Eastridge had been convicted of aggravated robbery and aggravated assault in another case.

Eastridge admits that no objection was lodged at trial to the first two statements listed above. " 'The admission of evidence, even if erroneous, may not be raised as an issue on appeal unless there appears of record a timely objection so stated as to make clear the specific ground of the objection.' [Citation omitted.]" *State v. Synoracki*, 253 Kan. 59, 70, 853 P.2d 24 (1993).

With regard to the third statement listed above, the record reflects that Eastridge did object at trial on the grounds the question was beyond the scope of the examination and was improper. Eastridge did not object that the evidence violated K.S.A. 60-455. "The defendant cannot object to the introduction of evidence on one ground at trial and then assert a different ground on appeal." *Synoracki*, 253 Kan. 59, Syl. ¶ 10. Moreover, the record reflects that the district court sustained Eastridge's objection, holding that the testimony was inadmissible hearsay. Eastridge now argues that the district court should have admonished the jury to ignore the statement. The failure to request such an admonition at trial bars our consideration of this argument. K.S.A. 60-404; *Hogue v. Kansas Power & Light Co.*, 212 Kan. 339, 344, 510 P.2d 1308 (1973).

Eastridge attempts to avoid the contemporaneous objection rule by couching his argument as a constitutional issue. He contends the admission of evidence of prior crimes and wrongdoing denied him a fair trial. This claim was not asserted in Eastridge's motion for new trial. "When constitutional grounds are asserted for the first time on appeal, they are not properly before the appellate court for review." *State v. Steadman*, 253 Kan. 297, 306, 855 P.2d 919 (1993). In any event, we do not consider that the evidentiary matters Eastridge complains about were such extreme errors as to deny Eastridge a fair trial.

## SENTENCING

Eastridge's final argument on appeal is that the district court erred in enhancing his sentence under the Habitual Criminal Act, K.S.A. 1992 Supp. 21-4504. That statute provides, in pertinent

part, that upon motion by the State the trial judge shall enhance the defendant's sentence

"[i]f [the] defendant is convicted of a felony other than a felony specified in article 34, 35 or 36 of chapter 21 of Kansas Statutes Annotated having been convicted at least twice before for any such felony offenses or comparable felony offenses under the laws of another state, the federal government or a foreign government." K.S.A. 1992 Supp. 21-4504(c).

The district court found Eastridge had prior convictions for felony theft, K.S.A. 21-3701, and burglary, K.S.A. 21-3715, in enhancing Eastridge's sentence for arson, K.S.A. 21-3718. Eastridge attacks the enhanced sentence on the grounds that K.S.A. 1992 Supp. 21-4504 is ambiguous and that only arson may be considered in enhancing a sentence for conviction of arson. These arguments are without merit.

This court recently examined K.S.A. 21-4504 in *State v. Hankins*, 19 Kan. App. 2d 1036, 1041, 880 P.2d 271 (1994):

"This statute unambiguously provides for enhanced sentences for defendants who are convicted of felony offenses not specified in article 34, 35, or 36 of K.S.A. chapter 21, after 'having been convicted at least twice before for any such felony offenses.' The 'any such felony offenses' language pertains to any felonies not specified in articles 34, 35, or 36. This interpretation follows from the ordinary meaning of the words employed by the legislature. 'Such' in modifying 'felony offenses' refers to the kind of felony offenses previously discussed— felonies not listed in articles 34, 35, or 36 of K.S.A. chapter 21.

"The district court correctly used the Habitual Criminal Act to enhance Hankins' sentence. The jury found Hankins guilty of possession of cocaine and marijuana—crimes not listed in articles 34, 35, and 36 of K.S.A. Chapter 21. The trial court found Hankins had prior felonies for burglary and theft—crimes not listed in articles 34, 35, and 36 of K.S.A. Chapter 21. The district court did not err in imposing sentence under the Habitual Criminal Act."

*Hankins* controls the sentencing issue in this case. The district court did not err in sentencing Eastridge for arson under the Habitual Criminal Act.

Affirmed.