(948 P.2d 677)

No. 76,476

STATE OF KANSAS, *Appellee*, v. TROY D. WRIGHT, *Appellant*.

Opinion filed
November 21, 1997.

*Steven R. Zinn*, deputy appellate defender, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Joe E. Lee*, assistant county attorney, *Rodney H. Symmonds*, county attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before BRAZIL, C.J., GREEN, J., and D. KEITH ANDERSON, District Judge, assigned.

GREEN, J.: Troy D. Wright was involved in an automobile collision that caused the death of one person and serious injury to another person. Wright was convicted by a jury of involuntary manslaughter, aggravated battery, operating a car with a blood alcohol concentration above .08, reckless driving, and transporting an open container. On appeal, Wright contends that because the collision occurred on June 25, 1994—the day before his 18th birthday, the trial court lacked jurisdiction to convict and to sentence him as an adult. We disagree. Wright further argues that his convictions for driving while having a blood alcohol level above .08 and for reckless driving must be set aside because they are multiplicitous with his conviction for involuntary manslaughter. We agree.

Shortly before 12 a.m. on June 25, 1994, or after 12 a.m. on June 26, 1994, Wright was driving around with his friend James Waidley. Both Wright and Waidley had been drinking.

Lee Callen was driving his friends Tyler Lewellen, Clay Meyer, and Scott Edwards in another car. When they recognized friends standing outside a Taco Bell restaurant, Callen attempted to make a left turn into the parking lot. Before Callen could complete his turn, Wright's car struck Callen's car, fatally injuring Clay Meyer and severely injuring Scott Edwards. Witnesses Trent Holman and Courtney Crofoot testified that Wright was speeding at the time of the collision.

In a pretrial motion, Wright argued that the court did not have jurisdiction over him because he was a juvenile at the time of the collision. The court found that there was sufficient evidence that the collision occurred after 12 a.m. for the State to proceed to trial. However, the court ruled that the question should be submitted to the jury. The court determined that the jury instructions would include, as an element of each offense, that the offenses occurred *on* June 26, 1994.

Wright was sentenced to consecutive terms of 120 months for the involuntary manslaughter conviction and 32 months for the aggravated battery conviction. Wright also received concurrent sentences of 6 months for the DUI and 3 months for the reckless driving, resulting in a controlling term of 152 months.

Wright first argues that there was insufficient evidence that the collision occurred after 12 a.m. on June 26, 1994. When the sufficiency of the evidence is challenged in a criminal case, this court's standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Knighten*, 260 Kan. 47, 52, 917 P.2d 1324 (1996).

In his brief, Wright argues that the State failed to prove that the collision occurred after 12 a.m. on June 26, 1994. Wright emphasizes that there was substantial evidence indicating that the collision occurred before 12 a.m. Specifically, Wright's passenger, James Waidley, testified that the collision occurred before 12 a.m. James Waidley testified that he left the scene after the collision and went into Taco Bell's restroom to clean his wounds. He then blacked out for a period. Next, James Waidley walked approxi-

mately 5 blocks to his home. As he approached his house, his father, Joe Waidley, was arriving home from work. Significantly, James Waidley testified that he blacked out several times on his way home and that his memory is incomplete regarding the sequence of events after the collision. However, Joe Waidley corroborated his son's testimony.

Joe Waidley testified that he worked from 4 p.m. to 12 a.m. and routinely left work shortly after 12 a.m., arriving home at approximately 12:15 a.m. Although Joe Waidley testified that he did not check the time upon arriving home on June 26, he testified that he followed his routine and estimated that he arrived home at or near 12:15 a.m. Joe Waidley further testified that as he pulled into his driveway on June 26, he saw his son James coming up the sidewalk. Wright argues that the timing of this chain of events implies that the collision occurred before 12 a.m.

Courtney Crofoot, a witness for the State, testified that the collision occurred between 10 p.m. and 12 a.m. However, Crofoot emphasized that he was unsure of the time. Finally, Callen, the driver of the other car, testified that before the collision he was looking for a telephone booth to call home because he had a 12 a.m. curfew. In response to cross-examination regarding the time of the collision, Callen testified, "I remember that my curfew was 12:00 and I was usually supposed to call if I was going to stay later and I was getting ready to call because Tyler wanted to go to Taco Bell and I knew that we would be later." This implies that Callen was calling home before the expiration of the curfew. However, Callen also testified that he was unsure of the time.

The testimony of these witnesses does not show that the collision occurred before midnight. For example, the testimony of Joe Waidley that he got off work at 12 a.m. and that he saw his son James coming up the sidewalk as he was pulling into his driveway does not prove the collision occurred before 12 a.m. Neither does Callen's testimony that he was getting ready to call home to extend his 12 a.m. curfew show that the collision occurred before 12 a.m. Here, the conclusion that the collision occurred before midnight does not really follow from the witnesses' stories. For instance, we do not know how much time had elapsed from when the collision

occurred and when Joe Waidley saw his son walking up the sidewalk. Joe Waidley may have arrived home later than the approximately 12:15 a.m. to which he testified. As to Callen, it could have been after midnight when he thought about his 12 a.m. curfew.

On the other hand, the Taco Bell manager, Edward Trammell, testified that before the collision he called police to clear the restaurant's lot of "kids hanging out." Angela Beyer, the police dispatcher, testified that a call was received for a lot clear at Taco Bell at 12:05 a.m. This testimony was corroborated by a dispatch card, which is time stamped as each call comes in. Moreover, Officer Darren Hamilton testified that he received a dispatch for a lot clear at Taco Bell at 12:06 a.m. While enroute to the lot clear, at approximately 12:09 a.m., Hamilton received a dispatch that an accident had occurred in the same area. Finally, Trammell testified that he heard the accident shortly *after* calling for a lot clear call and that he then called police to report the accident.

The question of which witnesses to believe was clearly for the jury. This court's limitations in this regard is clear, as our Supreme Court has repeatedly stated: "The appellate courts are not to reweigh the testimony or pass on the credibility of witnesses." *McKissick v. Frye*, 255 Kan. 566, 592, 876 P.2d 1371 (1994); see *Taylor v. State*, 252 Kan. 98, 104, 843 P.2d 682 (1992). Applying our standard of review, a rational factfinder could have found, beyond a reasonable doubt, that the collision occurred after 12 a.m.

Next, Wright argues that the trial court erred in adopting and applying the birthday rule. This is a question of first impression in Kansas. The parties agree that this issue involves a question of law and that our review is unlimited. See *State v. MacDonald*, 253 Kan. 320, 321, 856 P.2d 116 (1993).

In the alternative, Wright contended that even if it was determined that the collision occurred shortly after 12 a.m. on June 26, he would not reach the age of 18 until the exact anniversary of the time of his birth. Wright's mother testified that Wright was born at 2:09 p.m. on June 26, 1976. To the contrary, the State argued that the trial court should adopt either the coming of age rule (day before) or the birthday rule (first moment of birthday) and reject any rule based upon the time of birth.

In finding the State's argument persuasive, the trial court stated:

"[T]he Court finds that the defendant was born at 2:09 p.m. on the 26th day of June, 1976. The issue based on these findings of fact results in the question does the court have jurisdiction to proceed under the Kansas criminal code found at Chapter 21 of the Kansas Statutes Annotated. To answer that question the Court must determine when the defendant became 18 years of age. The Court has decided to use the birthday rule described in the North Carolina Court of Appeals decision: *In the Matter of Terry Anton Robinson*, 464 S.E. 2d, 86, a 1995 decision. The custom of Kansas has rejected the coming of age rule found in the common law. In Kansas a person reaches a certain age on the anniversary of their birth, thus if a person is born on the 1st day of January 1980 he or she becomes 16 on the 1st day of January 1996 and 18 on the 1st day of January 1998. The Court rejects the fraction of day argument that a person reaches a certain age when that moment coincides with the time of birth found on a birth certificate. For example, I'm sorry, this rule could prove unworkable. For example, when does a person turn 18 who was born on one side of the international dateline in Japan and charged with an offense in the United States. Or when does a person turn 18 who was born in California and whose birth would be recorded in pacific time and charged with a crime in New York in eastern time. Does a person's age of majority depend on how many February 29's occurred during his or her lifetime. For these reasons the Court rejects the fraction of a day rule. Court finds that the defendant is properly charged in the Kansas criminal code."

To determine if the trial court was correct in adopting the birthday rule, we need to consider some reported cases on this point from other states. For instance, in *Commonwealth v. Iafrate*, 527 Pa. 497, 594 A.2d 293 (1991), the defendant was convicted under Pennsylvania's Criminal Code of offenses committed at approximately 8 p.m. on the day before his 18th birthday. The Supreme Court of Pennsylvania reversed the conviction and held that for the purposes of determining juvenile jurisdiction, a juvenile attains the age of majority on the anniversary of his or her birth date, rather than on the day before, as recognized at common law. In its opinion, the *Iafrate* court explained the common-law rule as follows:

"The genesis of the rule that a person reaches a given age on the day preceding the anniversary of his birth can be traced to seventeenth century England. *See Nichols v. Ramsel*, 86 Eng. Rep. 1072 (K.B. 1677); *Herbert v. Turball*, 83 Eng. Rep. 1129 (K.B. 1663). *See also* 1 W. Blackstone, Commentaries °463 ("So that full age in male or female is twenty one years, which age is completed on the day preceding the anniversary of a person's birth . . . , who till that time is an infant

and so styled in law . . ."); *Annot: Inclusion or Exclusion of the Day of Birth in Computing One's Age*, 5 A.L.R. 2d 1143 (1949). The rule developed as

> 'an exception to the general rule of the common law for computation of time which excluded the first day and included the last . . . . The exception was a fiction introduced in the law apparently because the common law took no notice of fractions of a day . . . . This legal fiction therefore was originally established to aid persons who would experience hardship or loss by virtue of the general rule of computation.' *United States v. Tucker*, 407 A.2d 1067, 1070 (App. D.C. 1979)." 527 Pa. at 499-00.

In adopting the birthday rule, the *Iafrate* court reasoned that the birthday rule was consistent with common perceptions of attaining age. The court explained:

> "It is manifestly clear to us that in common usage a person 'is under' a certain age until the anniversary date of the person's birthdate. In enacting the Juvenile Act, we can fairly assume that the General Assembly was fully cognizant of this common conception. Moreover, since the Juvenile Act is rehabilitative in nature, an extension rather than a restriction of the protective period of the Act is consistent with the directive that all but certain classes of statutes 'shall be liberally construed to effect their objects and to promote justice.' [Citation omitted.] Conversely, since the Crimes Code is obviously penal in nature, its application should be strictly construed against the party seeking enforcement and in favor of the defendant. [Citation omitted.] Therefore, we are convinced that the General Assembly did not intend the common law rule, which provides that a person reaches his next year in age the day prior to the anniversary of his birthdate, to apply to the Juvenile Act. We are by no means alone in deciding the issue in this manner. See *State v. Hansen*, 304 Or. 169, 743 P.2d 157 (1987); *State v. Stangel*, 284 N.W.2d 4 (Minn. 1979); *United States v. Tucker*, 407 A.2d 1067 (App. D.C. 1979); *People v. Stevenson*, 17 N.Y.2d 682, 269 N.Y.S.2d 458, 216 N.E.2d 615 (1966), *rev'g and adopting dissent in* 23 A.D. 2d 472, 262 N.Y.S.2d 238 (1965) (Christ, J., dissenting)." 527 Pa. at 501-02.

In *Ellingham v. Morton*, 116 App. Div. 2d 1032, 498 N.Y.S.2d 650 (1986), which is cited by the trial court, the defendant argued that the court lacked jurisdiction to try him for burglary. Although the offense occurred at 3 a.m. on the defendant's 16th birthday, the defendant argued that he did not reach 16 until the anniversary of the moment of his birth. The Appellate Division of the Supreme Court rejected the defendant's argument and held that he became 16 years of age at the beginning of the day of his 16th birthday. The *Ellingham* court recognized that New York had previously

rejected the common-law rule, but emphasized that the common-law principle remains that in determining a person's age, fractions of days are not computed. The court stated:

"In *People v. Stevenson*, 23 A.D.2d 472, 262 N.Y.S.2d 238, *revd. on dissenting opn. below*, 17 N.Y.2d 682, 269 N.Y.S.2d 458, 216 N.E.2d 615, the Court of Appeals rejected the common law rule that a person reaches his next year of age on the day before his birthday and held that he does not do so until the day of his birthday. *This, however, did not change the common law principle that in determining a person's age, fractions of days are not computed. (see Parker v. State of Maryland*, 61 Md. App. 35, 484 A.2d 1020, 1022; *State v. Brown*, 443 S.W.2d 805, 807, *supra*; *see also, People v. Anderson*, 108 Ill. App. 3d 563, 64 Ill. Dec. 136, 142-143, 439 N.E.2d 65, 71-72). *Nor do we think it ought to be changed, for it furnishes a rule of uniformity and certainty that is most desirable (see Leo v. Maro Display, Inc.*, [122 R.I. 737], 412 A.2d at p. 222)." (Emphasis added.) 116 App. Div. 2d at 1033.

In arguing that the trial court and this court should look to the precise moment of his birth, Wright cites the *Ellingham* dissent. Quoting the general rule that criminal statutes should be strictly construed, the dissent reasons:

"In my view, the common law principle of not recognizing fractions of days in computing time is as much a fiction as the rule that a person is deemed to attain a given age on the day preceding the anniversary of his birth [citations omitted]. New York courts indeed have, in the appropriate case, considered fractions of a day in computing time. 'The law does not regard fractions of a day, except in cases where the hour itself is material, as is the case where priority of judgments is in question [citations omitted].' [Citations omitted.] 'As a general rule the court does not inquire into the fractions of a day, *except for the purpose of guarding against injustice*.' [Citations omitted.]

"In the instant case, the precise hour of defendant's birth is material because it is at that time, on his anniversary, that he turned 16. Injustice would be done if he is forced to face the criminal justice system rather than the juvenile delinquent justice system before he was truly an adult under the statute. '[C]riminal statutes must be "strictly construed against the party seeking their enforcement and in favor of the person being proceeded against." ' [Citations omitted.] Under the circumstances, defendant should be given the benefit of the fractional hour of his birth in relationship to the time the crime was committed, and the writ should be granted because at that time the criminal court lacked jurisdiction over him." 116 App. Div. 2d at 1033-34 (Doerr, J., dissenting).

Wright's arguments mirror those made in the *Ellingham* dissent. However, Wright cites no majority decisions adopting such a rule.

Finally, in *Matter of Robinson*, 120 N.C. App. 874, 464 S.E.2d 86 (1995), the North Carolina Court of Appeals reversed a trial court which ruled that a defendant had not reached 13 years of age at the time he committed the charged offenses where the offenses were committed on the date of his 13th birthday, but several hours before his birth hour. The *Robinson* court discussed both the birthday and coming of age rules and concluded that under either rule the defendant had attained 13 years at the time the offenses were committed. The court expressly rejected the defendant's contention that he only reached 13 years at the hour of his birth. The *Robinson* court stated:

"In absence of a contrary statutory provision, the common law principle is well-established that 'the law does not regard the fraction of a day' in the computation of birthdays. *State v. Mason*, 66 N.C. 636, 637 (1872). . . .

". . . The court in *Ellingham* acknowledged that New York courts had rejected the 'coming of age' rule in favor of the 'birthday rule,' but that the adoption of the 'birthday' rule did not affect the common law principle that fractions of a day are not counted. . . . 498 N.Y.S.2d at 651. The court chose to retain the 'no fractions of a day' approach because it 'furnishes a rule of uniformity and certainty that is most desirable.' . . .

"We agree that the 'no fractions of a day' approach provides needed uniformity and certainty. Thus, we hold that fractions of days may not be considered in determining when a juvenile can be transferred to superior court for trial pursuant to N.C.G.S. section 7A-608. Consequently, under either the 'coming of age' rule or the 'birthday rule,' applied without consideration of fractions of days, respondent was thirteen years of age at the time the offenses were allegedly committed." 120 N.C. App. at 876-77.

Based upon the earlier mentioned persuasive authority, the trial court was correct in adopting and applying the birthday rule.

Next, Wright argues that his convictions for operating a vehicle with a blood alcohol level over .08 and reckless driving are multiplicitous with his conviction for involuntary manslaughter. We agree. In acknowledging our Supreme Court's definition of multiplicity, this court stated:

"The Supreme Court has stated that multiplicity is 'the charging of a single offense in several counts of a complaint or information.' [Citation omitted.] The primary concern with multiplicity is that it creates the potential for multiple punishments for a single offense, which is prohibited by the double jeopardy clause of the Fifth Amendment of the United States Constitution and section 10 of the

Kansas Constitution Bill of Rights. [Citation omitted.]" *State v. Eastridge*, 20 Kan. App. 2d 973, 975, 894 P.2d 243 (1995).

"The traditional test of whether charged offenses are multiplicitous is whether each charge requires proof of a fact not required in proving the other." 20 Kan. App. 2d at 975. "Multiplicity does not depend on whether the facts proved at trial are actually used to support the convictions of both offenses; rather, multiplicity turns on whether the necessary elements of proof of the one crime are included in the other." *State v. Mason*, 250 Kan. 393, Syl. ¶ 3, 827 P.2d 748.(1992); see *State v. Utterback*, 256 Kan. 340, 342, 886 P.2d 808 (1994).

In the instant case, the State concedes that it was necessary for the State to prove the DUI or reckless driving in order to prove involuntary manslaughter under the facts of this case. Because it is unclear whether the jury determined Wright's guilt based on one or both of the misdemeanors, the misdemeanor convictions are multiplicitous with Wright's conviction for involuntary manslaughter. See *State v. Adams*, 242 Kan. 20, 26, 744 P.2d 833 (1987) (Proof of underlying misdemeanors for involuntary manslaughter are multiplicitous with proof of same misdemeanors. "Alleging the underlying misdemeanors in the alternative would not have helped, since it would have been impossible for this court to determine which one the jury relied upon in finding the defendant guilty of involuntary manslaughter.")

Finally, we received a notice of illegal sentence from Wright after he submitted his brief. Wright argues that the trial court incorrectly sentenced him using the 1994 amendments to the sentencing guidelines. We agree.

Both the trial court and the jury found that the collision occurred on June 26, 1994. Therefore, Wright should have been sentenced under K.S.A. 1993 Supp. 21-3404. See *State v. Fierro*, 257 Kan. 639, Syl. ¶ 3, 895 P.2d 186 (1995) ("The fundamental rule of sentencing is that a person convicted of a crime is given the sentence in effect when the crime was committed.").

Both K.S.A. 1993 Supp. 21-3404 and K.S.A. 1994 Supp. 21-3404 provide that involuntary manslaughter is a severity level 5 person

felony. The parties agree that Wright's criminal history is B. On the nondrug grid of K.S.A. 1993 Supp. 21-4704, a severity level 5 offense with a criminal history of B corresponds with a sentencing range of 57-64 months. The middle sentence is 60 months. On the nondrug grid of K.S.A. 1994 Supp. 21-4704, a severity level 5 offense with a criminal history of B corresponds with a sentencing range of 114-128 months. The middle sentence is 120 months.

The trial court sentenced Wright to 120 months for involuntary manslaughter, K.S.A. 21-3404. Because the trial court sentenced Wright based on K.S.A. 1994 Supp. 21-3404, his sentence should be corrected to reflect a sentence based on K.S.A. 1993 Supp. 21-3404.

We affirm the involuntary manslaughter, aggravated battery, and transporting an open container convictions; we reverse the operating a car with a blood alcohol level above .08 and reckless driving convictions; and we vacate the involuntary manslaughter sentence and remand for resentencing.