(966 P.2d 690)

No. 78,921

STATE OF KANSAS, *Appellee*, v. DEANNE J. BUHR, *Appellant*.

Opinion filed September 25, 1998.

*Elizabeth Seale Cateforis*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for the appellant.

*Kerwin L. Spencer*, special prosecutor, and *Carla J. Stovall*, attorney general, for the appellee.

Before LEWIS, P.J., PIERRON, J., and REBECCA L. PILSHAW, District Judge, assigned.

PIERRON: Deanne J. Buhr appeals her conviction of one count of conspiracy to sell marijuana, a severity level 3 drug felony, in violation of K.S.A. 21-3302 and K.S.A. 1995 Supp. 65-4163; two counts of the sale of marijuana, severity level 3 drug felonies, in violation of K.S.A. 1995 Supp. 65-4163; and one count of contributing to a child's misconduct, a level 7 person felony, in violation of K.S.A. 21-3612. Buhr argues the jury instructions were improper. She also contends her conviction for contributing to a child's misconduct is multiplicitous with her convictions for aiding and abetting the sale of marijuana and conspiracy to sell marijuana. We affirm.

In exchange for a reduction of drug charges, Shawna Plummer agreed to work as a confidential informant for the police. On February 15, 1996, she went to the Sav-A-Trip in Mulvane and asked

T.J. if he knew the whereabouts of a certain person (the target of an undercover drug operation). T.J. told Plummer he did not, but he offered to sell her marijuana for $110 an ounce. T.J. is Buhr's 16-year-old son. He lived with Buhr and Buhr's cousin, Treasa Linthicum.

The next day Plummer met T.J. at the Sav-A-Trip to purchase marijuana. A car arrived with Linthicum driving, Buhr in the front passenger seat, and T.J. in the back seat. Plummer asked who to give the money to, and Buhr replied, "Give it to T.J. because I don't deal drugs no more, I just smoke it." Plummer gave $110 to T.J. He told Plummer he would page her when she could pick up the marijuana and the three left.

That evening, T.J. paged Plummer and they arranged to meet. T.J. and Linthicum, without Buhr, met Plummer and told her to go to their house. At T.J.'s house, Plummer was met at the front door by T.J. and Linthicum. She left the house with a bag of marijuana.

On February 21, 1996, Plummer called T.J. at his house to purchase some more marijuana. She told T.J. she would call him back to see if he could get the drugs. Plummer went to the Sav-A-Trip where she met Buhr and Linthicum. Plummer told Linthicum she had spoken to T.J. about buying some marijuana and Linthicum replied they could get some since Buhr had to tutor their supplier's children in Wichita. Although Buhr was around, Plummer was unclear of her location during the conversation. Plummer took the money to T.J.'s house. Linthicum and Buhr were also at the house. T.J. again told Plummer he would page her for the delivery.

After not receiving a page by midnight, Plummer went to T.J.'s house. T.J. gave her a bag of marijuana. Buhr told Plummer to come back to her bedroom to see some kittens. While in the bedroom, Linthicum told Plummer that if the marijuana was not good enough, they would get her better stuff. Plummer said Buhr agreed with Linthicum that they could get her some more marijuana.

Buhr denied making the statement on February 16, 1996, that she did not deal drugs but only smoked them. She also said she was talking to a friend and did not hear the conversation between Plummer and T.J. Buhr also testified she was at school all day on

February 21, 1996, and not at the Sav-A-Trip with Linthicum. She said she tutored her friend's children in Wichita that evening and Linthicum and T.J. were with her. Buhr denied seeing or hearing Plummer when they returned from Wichita, and as far as she knew, Plummer had not come to their house that night.

Buhr was charged with conspiring with Linthicum and T.J. to sell marijuana, contributing to T.J.'s misconduct by encouraging him to sell marijuana, and two counts of the sale of marijuana to Plummer. The jury found Buhr guilty on all counts. The trial court sentenced Buhr to 15 months' incarceration on each of the charges of the sale of marijuana, 9 months' incarceration on the conspiracy charge, and 12 months incarceration for contributing to a minor's misconduct. All sentences were ordered to run concurrently.

Buhr first argues the trial court erred in modifying the elements in the sale of marijuana instructions to include aiding and abetting instead of including a separate aiding and abetting instruction.

"Jury instructions are to be considered together and read as a whole without isolating any one instruction. If the instructions properly and fairly state the law as applied to the facts in the case and the jury could not reasonably have been misled by them, then the instructions do not constitute reversible error although they may be in some small way erroneous." *State v. Walker*, 252 Kan. 279, 295, 895 P.2d 1 (1993).

Jury instructions 5 and 6 are identical except for the date of the offenses. Jury instruction 5 lists the elements of the crime of the sale of marijuana as follows:

"1. That the defendant aided and abetted in the sale or delivery of an hallucinogenic drug known as marijuana.
"2. That the defendant did so intentionally; and
"3. That the defendant did so on or about the 16th day of February, 1996, in Sumner County, Kansas."

During the instructions conference, Buhr objected to instructions 5 and 6 as including aiding and abetting language instead of simply stating that the defendant sold or delivered the drugs. Buhr argued jury instruction 10, which explained aiding and abetting, was adequate for the State's theory that she had aided and abetted in the sale of marijuana. The State responded that the instructions were correct because they emphasized that it was unnecessary for

the jury to find Buhr actually took the money or delivered the drugs for her to be guilty of the sale of marijuana. The court ruled that the instructions would lead the jury to both the instruction concerning aiding and abetting and the instruction regarding sale. The court found instructions 5 and 6, as stated, clarified the State's theory that Buhr aided and abetted in the commission of the crime.

Buhr contends the trial court should adhere to the PIK instructions unless a modification is necessary. See *State v. Moncla*, 262 Kan. 58, 71, 936 P.2d 727 (1997). She argues the sentencing court did not follow the PIK instructions when a modification was unnecessary. She claims the error should not be held to be harmless error.

"The use of PIK instructions is not mandatory but is strongly recommended. The pattern instructions have been developed by a knowledgeable committee to bring accuracy, clarity, and uniformity to jury instructions. They should be the starting point in the preparation of any set of jury instructions. If the particular facts in a given case require modification of the applicable pattern instruction, or the addition of some instruction not included in PIK, the trial court should not hesitate to make such modification or addition. However, absent such need, PIK instructions and recommendations should be followed." 262 Kan. 58, Syl. ¶ 5.

Buhr does not argue that the jury instructions do not properly and fairly state the law as applied to the facts of her case. Additionally, she does not contest that the jury instructions correctly set forth the State's theory that she aided and abetted in the crime of the sale of marijuana. The fact that the trial court altered the instructions explaining the elements of the crime of the sale of marijuana to reflect the State's theory of the case and to assist the jury in examining the State's case was harmless error, if error at all. If the instructions fairly and properly state the law applicable to the case, "then the instructions do not constitute reversible error although they may be in some small way erroneous." *State v. Aikins*, 261 Kan. 346, Syl. ¶ 25, 932 P.2d 408 (1997).

Buhr also argues her conviction for contributing to a child's misconduct should be reversed because it is multiplicitous with her convictions for aiding and abetting the sale of marijuana and conspiracy to sell marijuana.

Whether convictions are multiplicitous is a question of law. Our standard of review on questions of law is unlimited. Multiplicity is a question of law that may be raised for the first time on appeal if necessary to serve the ends of justice or prevent the denial of fundamental rights. *State v. Eastridge*, 20 Kan. App. 2d 973, 975, 894 P.2d 243 (1995).

"The Supreme Court has stated that multiplicity is 'the charging of a single offense in several counts of a complaint or information.' [Citation omitted.] The primary concern with multiplicity is that it creates the potential for multiple punishments for a single offense, which is prohibited by the double jeopardy clause of the Fifth Amendment of the United States Constitution and section 10 of the Kansas Constitution Bill of Rights. [Citation omitted.]" 20 Kan. App. 2d at 975.

To determine whether convictions are multiplicitous, we start with *State v. Fike*, 243 Kan. 365, 757 P.2d 724 (1988), where the court set forth a two-pronged analysis to examine lesser included offenses. The *Fike* test and its relationship to multiplicitous charges was discussed in *State v. Warren*, 252 Kan. 169, 175-82, 843 P.2d 224 (1992). The first step is to determine whether all of the statutory elements of the lesser crime are among the statutory elements required to prove the greater crime. If so, then the lesser crime is a lesser included offense of the greater crime. Buhr does not argue multiplicity based on the first prong of *Fike*.

Under the second prong of *Fike*, if the factual allegations of the charging document and the evidence required to be adduced at trial to prove these allegations would also necessarily prove the lesser crime, then there is multiplicity. Buhr argues the factual allegations regarding the conspiracy and the sale offenses in the amended information, and the evidence required to prove those charges, necessarily proved the charge of contributing to a child's misconduct.

Buhr suggests that "[a]iding, abetting, advising, hiring, counseling, or procuring" encompass the same conduct as "encouraging or causing" and was proven by the State's evidence. She argues that to prove all these elements, the State presented evidence that she directed Plummer to give the money to T.J., that she drove T.J. to Wichita knowing he was going to buy marijuana, and that she agreed with Linthicum that they could obtain other marijuana.

Buhr contends the conspiracy conviction encompasses the same conduct as contributing to a child's misconduct.

The State argues that in order to establish Buhr's conspiracy and sale of marijuana convictions, it demonstrated that Buhr aided and abetted T.J. in committing the crimes. This was done by showing that Buhr told Plummer to give the money to T.J. on the first sale, and that Buhr indicated control during the second sale by agreeing with Linthicum that if Plummer was not satisfied with the quality of the marijuana they could get more. The State contends it was not required to prove, among other things, that T.J was under 18 years of age.

Buhr's arguments under the second prong of *Fike* are not persuasive. In proving the crime of contributing to a child's misconduct, the State would be required to prove that the child was under the age of 18. This is not an allegation in the amended information under the charges of sale and conspiracy to sell marijuana, nor would this fact necessarily be proven in the State's case for sale and conspiracy to sell marijuana.

The crimes at issue here concern two different criminal and legislative aims. *cf. Eastridge*, 20 Kan. App. 2d at 974-78 (multiplicity concerning charges of arson and conspiracy to commit arson). The crime of selling drugs involves crimes against society and public health. Contributing to a child's misconduct is a crime affecting the child.

The State contends that the essence of the charge of contributing to a child's misconduct is corrupting the morals of the minor, which is easily distinguishable from the essence of the charge of selling or conspiring to sell marijuana. The point is that Buhr involved a child in the crime. The State correctly argues that if her analysis is accepted, it would make no difference whether Buhr's co-conspirator/co-defendant was an adult or a child. The legislature set out a separate and independent crime of contributing to a child's misconduct. By involving her minor son in the crime or making him the primary actor, Buhr has invoked the essence of the crime of contributing to a child's misconduct in addition to the substantive drug crime.

Although multiplicity was not raised in *State v. Johnson*, 258 Kan. 61, 899 P.2d 1050 (1995), the case is an example of how a child's involvement permits a charge of contributing to the misconduct of a child. There, the defendant hired a juvenile hitman to kill another man's wife. The defendant was convicted of, *inter alia*, first-degree murder, conspiracy to commit first-degree murder, and contributing to a child's misconduct. Without any mention of multiplicity, the defendant's convictions were affirmed on appeal.

Buhr's claims of multiplicity fail.

Affirmed.